## STATE OF FLORIDA v MUSSIKA
### Case No. 88 4395 CFA 10
Seventeenth Judicial Circuit, Broward County
December 28, 1988

### APPEARANCES OF COUNSEL
**Carol Wilhelm,** Assistant State Attorney, for plaintiff.
**Norman Elliott Kent,** P.A., for defendant

### OPINION OF THE COURT

MARK E. POLEN, Circuit Judge.

On March 5, 1988, the defendant, Elvy Mussika, was arrested and charged with cultivation of marijuana, in violation of Florida Statute § 893.13((1)(a). The case came before the Court for trial on August 15, 1988. The Court heard testimony from three witnesses, including the defendant. After due deliberation, the COurt found Ms. Mussika not guilty of the charges by eason of a defense of medical necessity. The Court now renders the following decision.

*Facts*

The central facts of this case are not in dispute. On March 5, 1988, and in response to a call from the defendant concerning a disturbance by a tenant, Officers O'Hara and Ferguson seized four plants from the defendant's home and charged the defendant with the criminal cultivation of cannabis sativa L, more commonly known as marijuana.

There is no question in this case that the defendant, Ms. Elvy Mussika, was growing marijuana in her home. The defense has stipulated that the plants confiscated from Ms. Mussika's home by Officers O'Hara and Ferguson are, in fact, marijuana plans. The defense has also stipulated that the seized plans are of a sufficient weight to make said cultivation of a felony offense under Florida law. If convicted on these charges, the defendant, who has no prior record of criminal conduct, could be sented to serve five years in prison and fined $5,000.

There is no dispute in this case that the defendant, Ms. Mussika, is afflicted with galucoma, a progressive ocular disorder which, inadequately treated, results in blindness.

There is no dispute over the facts of Ms. Mussika's extensive medical history. The defendant has been illicted with ocular disorders since early childhood. Over the past forty years, she has employed all of the available medical therapies and, when these failed, undergone more than twenty risky surgical procedures in an effort to prolong her failing sight. Based on the testimony presented to this Court, the defendant has, on several occasions participated in research programs where she was exposed to experimental medications and/or has undergone experimental surgical procedures in an effort to preserve her sight.[1] Not only did these experimental procedures fail to reduce the elevated introcular tensions caused by defendant's galucoma, but they exposed Ms. Mussika to significant medical risks. Indeed, the last of these surgical procedures cost the defendant her sight in one eye.

At trial, the defendant sought to exonerate herself through the presentation of evidence tending to show that the possession, cultivation and use of marijuana was not undertaken with criminal intent, but as a consequence of her medical necessity to control the blinding ocular tensions caused by her glaucoma.

The Court heard testimony regarding the defendant's medical history from Paul Palmberg, M.D. of the Bascom Palmer Eye Institute. Dr. Palmberg testified that he has treated Ms. Mussika for galucoma, that her disease is beyond the reach of convention medical therapies, and that numerous attempts to control her disease through surgical procedures have failed.

Dr. Palmberg further testified that he was aware that the defendant was using marijuana to reduce her blinding ocular tensions.

Based on his testimony, it is clear that Dr. Palmberg did not initially

---

[1] These "experimental" procedures included the use of medical and/or surgical therapies which are not yet approved by FDA for general medical use.

accept the defendant's use of marijuana as a legitimate treatment for glaucoma. However, over time, it became increasingly obvious to Dr. Palmberg that marijuana was, in fact, significantly reducing the defendant's otherwise uncontrollable ocular tensions, and that Ms. Mussika's use of marijuana was not resulting in any apparent adverse effects.

The fact that Dr. Palmberg—clearly no advocate for marijuana's legalization—grudgingly concluded after several years of treatment, that marijuana has a legitimate role to play in the treatment of Ms. Mussika's otherwise uncontrollable glaucoma., was very persuasive to this Court. Not only is Dr. Palmberg a highly respected medical practitioner and ocular specialist from one of the leading eye institutes in the United States, but he who has lectured all over the world, reached this conclusion based upon his direct observation and treatment of the defendant over a period of years.

As Dr. Palmberg testified, he first opposed Ms. Mussika's use of marijuana to reduce her eye pressures. However, in the courts of treating Ms. Mussika he often checked her introcular pressures. During these examinations he discovered that on days when Ms. Mussika reported she had smoked marijuana her introcular pressures were consistently lower than on days when she reported she had not smoked marijuana. It was only on the basis of the consistent results of these objective medical tests, conducted over a period of years, that Dr. Palmberg came to the conclusion that marijuana is of genuine therapeutic value to the defendant and accepted her use of the drug.

It is clear from the testimony that Dr. Palmberg resisted Ms. Mussika's initial reports of marijuana's therapeutic value and only after considerable time and experience in treating her deiced marijuana was, in fact, contributing to her treatment. In this respect, the Court found Dr. Palmberg to be a particularly credible witness who only overcame his initial medical and legal objections after the fact of marijuana's therapeutic benefit to Ms. Mussika could no longer be denied.

Testimony was also taken from a second expert witness, Robert Randall. Mr. Randall, whose expertise was not challenged, has an extensive knowledge of marijuana's therapeutic use and legal control combined with a unique, personal experience with marijuana's medical use. I found him to be a highly credible witness.

Several aspects of Mr. Randall's experience are strikingly similar to the instant case.

First, Mr. Randall, a glaucoma patient, has legally employed marijuana, under medical supervision, for more than ten years. Through the legal, medical use if marijuana, he has managed to prolong his sight.

146

The fact that Mr. Randall has legally employed marijuana for the specific purpose of controlling the elevated ocular tensions associated with Glaucoma was especially pertinent to the particular facts in this case. As outlined by Dr. Palmberg, the defendant, Ms. Mussika, like Mr. Randall, suffers from glaucoma which cannot be controlled through the use of available medical treatments. And, like Mr. Randall, the defendant in this case discovered that the use of marijuana could significantly reduce the elevated ocular tensions caused by glaucoma. That testimony, too, is undisputed.

The only apparent difference between Mr. Randall's medical condition and the condition of the defendant in this case is that Ms. Mussika, unlike Mr. Randall, has also undergone many surgical procedures in an unsuccessful effort to preserve her vision. Mr. Randall testified that through the licit, therapeutic use of marijuana he has been able to prolong his sight short of surgical intervention.

A second aspect of Mr. Randall's testimony was also of particular interest to this Court. Like the defendant, Elvy Mussika, Mr. Randall, when he first discovered marijuana's therapeutic benefits, attempted to grow marijuana to meet his medical needs and, as a consequence of his cultivation of marijuana, was arrested in 1975 in the District of Columbia and charged with a violation of the criminal law, namely, possession of a controlled substance.

At trial, Mr. Randall successfully asserted the defense of medical necessity. Expert medical witnesses with direct knowledge of Mr. Randall's medical condition testified that, absent marijuana's medical availability, Mr. Randall's disease could not be controlled through conventional medical means and he would go blind or be forced into risky surgical procedures.[2]

Two additional points emerged from Mr. Randall's testimony. First, despite his chronic, long-term and heavy use of marijuana (averaging 10 marijuana cigarettes per day), Mr. Randall's testimony was well spoken and extremely cogent. He testified that neither he nor his physician could detect any significant, long-term, adverse effects caused by his chronic use of marijuana.

Both Mr. Randall and Dr. Palmberg, in their respective testimony, however, noted many conventional glaucoma control drugs can, in fact, produce very serious, even life-threatening adverse effects. Both the defendant and Mr. Randall stated they had experienced significant adverse effects from standard glaucoma control agents.

[2] *United States v Randall,* 204 Wash. Daily Rptr. 2249 (1976).

Second, and not insignificantly, Mr. Randall is not blind. Given the nature of his medical history, as outlined in *United States v Randall,* and as related to his testimony, it is very clear that Mr. Randall's legal access to medicinal marijuana—as provided to him by federal agencies —has played a critical role in helping to prolong his sight.[3]

The fact that federal agencies provide marijuana to Mr. Randall to meet his legitimate medical needs, yet deny similarly afflicted individuals, like defendant, Elvy Mussika, similar licit access to care strikes this Court as irrational and discriminatory.

The third witness in this case was the defendant, Ms. Elvy Mussika. Ms. Mussika displayed great candor and honesty throughout these proceedings. From the day the police came to her house and asked to see her plants, she has not hesitate to tell the truth. She did not deny she was growing marijuana or attempt to mislead the police officers in any way. Indeed, she led them to her plants. At no time did she deny the plants were marijuana or seek to evade the officer's questions. She did not, in fact, act like a person with a guilty conscience. In every respect, this defendant has told the truth, even to her possible detriment.

The defendant was equally candid in explaining to the arresting officers why she was growing the marijuana, saying, "By all means, yes, I have marijuana. I take it for my eyesight. Here it is officer." The fact Ms. Mussika had, previous to her arrest, fully discussed her

---

[3] Based on testimony from Ms. Mussika, Dr. Palmberg and Mr. Randall it is clear the defendant, Ms. Mussika, has made numerous attempts to acquire licit access to marijuana to meet her legitimate medical needs. She asked a number of physicians to assist her in acquiring prescriptive access to marijuana, but they refused to assist her because of the tremendous paperwork and technical knowledge involved in such an undertaking.

Desperate to prolong her sight, the defendant, at one point in 1987 telephoned the Hollywood Police Department to requested their help in securing licit access to marijuana.

Only after the defendant was arrested on March 5, 1988, did she learn from Mr. Randall that her physician could request legal access to marijuana from the Federal Food and Drug Administration. At this juncture Dr. Palmberg and Mr. Randall agreed to assist her in filing for a "Compassionate" Investigational New Drug "IND" from the FDA.

Despite the fact that Dr. Palmberg filed his request with the FDA in April, 1988, FDA has not as yet approved Dr. Palmberg's request for licit supplies of marijuana to treat Ms. Mussika. At the time of this writing—and despite the verdict of this Court— Ms. Mussika has yet to receive any legal marijuana from FDA to meet her legitimate medical needs. The Court is greatly disturbed by the fact that, because of ederal inaction, Ms. Mussika must use illicit marijuana if she is to save her sight. Such a situation is not legally tenable, much less moral.

medical use of marijuana with Dr. Palmberg and other physicians, underscores the defendant's circumstance, as she viewed them, at the time of her arrest. I found Ms. Mussika to be one of the more credible witnesses I have ever heard.

The only other witness in the case was Officer Ferguson, the arresting officer. The officer's conduct was meritorious. He saw marijuana, knew its possession was against the law, and dutifully effectuated an arrest. The defendant does not dispute the validity of the arrest. Officer Ferguson's testimony was concise and concrete, verifying the candor of Ms. Mussika.

## Opinion

This is a case of first impression in this jurisdiction, one which raises significant legal issues. Consequently, the Court recognizes its responsibility to set forth clearly the applicable law. The questions presented by this caes are, is there a common law defense of medical necessity to criminal charges? If so, have the elements of the defense been established in this case?

While this is a case of first impression in this jurisdiction, it is not a case of first impression in the United States. As mentioned above, in *United States v Randall, supra,* the Court recognized the defense of medical necessity in a case involving the use of marijuana to treat glaucoma. In the case of *State v Diana,* 604 P.2d 1312 (Wa. 1981), the Court recognized the defense in a case involving the use of marijuana to treat multiple sclerosis.

In fact, a general defense of necessity has been recognized by legal scholars since the beginning of the twentieth century and is deeply rooted in on religious, cultural and legal traditions. *See,* C. Kenny, "Outlines of Criminal Law" 68-70 (1970); W. Clark and W. Marshall, "Treatise on the Law of Comes," 104 et. seq. (4th Ed. 1940); W. Burdick, "The Law of Crime" 260 (1946); M. Bassouini, "Criminal Law and its Processes" 108 et. seq. (1969), *Medical Necessity as a Defense to Criminal Liability,* 46 G. Washington L. Rev. 272 (1978); *The Right to Choose a Lesser Evil,* 65 J. Crim. L. 289 (1974). It has also been recognized by the Model Penal Code, §§ 33.01 and 3.02 and Comment (Tent. Draft No. 8, 9, 10, 1958). There is substantial unanimity that the defense of necessity exists.

Clark and Marshall, *supra,* note:

An act which would otherwise be a crime may be excused if the person accused can show that it was done only in order to avoid consequences which could not otherwise be avoided, and which, if they

149

had followed, would have inflicted upon him, or upon others whom he was bound to protect, inevitable and irreparable evil.

Necessity as was noted in *United States v Randall,* is "the conscious, rational act of one who is not guided by his own free will. It arises from a determination by the individual that any reasonable man in his situation would find, the personal consequences of violating the law less severe than the consequences of compliance," at 104 Wash. Daily Rptr. 2249 (1976).

In *Diana,* the Court described the defense as one that is available "when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from the violation of law. *State v Diana, supra,* at 1314.

The defense of medical necessity can be fairly compared to the law of self-defense. An action which constitutes a crime, e.g. an assault, battery or homicide, can be justified by the need to protect oneself or another person from harm. When a person undertakes an otherwise criminal action in order to prevent such harm, the person may be found not guilty of that crime. In essence, the person is compelled by circumstances beyond his control to breach the law in order to prevent injury.

With medical necessity, the individual is threatened with injury by a law that does not allow the use of a medicine. The individual is forced by circumstances beyond her control to take what would otherwise be an illegal act. Medical necessity is a form of self-defense against a generalized legal restraint, which blindly adhered to would cause irreversible biological injury that was not intended by the legislature.

The contours of the law of medical necessity were best described by the Court in *United States v Randall, supra.* In that case, the Court examined three issues:

1. Whether the cause or circumstance was brought about by the actor himself;

2. Whether the same objective could have been accomplished by a less offensive alternative which was available to the actor;

3. Whether the evil sought to be averted was less heinous than that performed to avoid it.

*Id.* at 2252.

Counsel for Ms. Mussika, a respected and knowledgeable criminal defense attorney, Norman Elliott Kent, Esq., propounded the following standards for the case *sub judice:*

150

The defense of medical necessity is a valid defense to the crime charged, and the defendant may be found not guilty by reason of medical necessity, if you, the trier of fact, determine that the defendant, Elvy Mussika, shows, by a preponderance of the evidence that:

(a) a genuine medical disorder does, in fact, exist;

(b) that the defendant did not bring about the circumstances causing her to break the law, that is, that Ms. Mussika is not responsible for causing her medical disorder, glaucoma;

(c) that weighted under the totality of the circumstances, Ms. Mussika's decision to do the illegal act, that is, to grow and use marijuana, was genuine and reasonable, tailored to minimize the effects of the medical disorder; and

(d) that the benefits derived from the use of the illegal substance are greater than the harm sought to be prevented by the controlled substances law, that is, whether Ms. Mussika's alleged "right to sight" outweighs the social harm that her use of marijuana might cause.

The Court hereby adopts these standards, and notes there was no objection from the State in accepting said application. In applying these standards to the case before the Court, there can be no question that the defense of medical necessity applies to the case at bar.

With regard to the first issue raised, there is no dispute that Ms. Mussika has glaucoma and that she did not bring about the condition. She has had glaucoma all her life and she did not cause that unfortunate condition. Indeed, the Court notes that even the defendant's children, both State university students, have been illicted with the disease.

With regard to the second issue, Ms. Mussika has exhausted all of the available glaucoma control drugs and surgical procedures including experimental, alternative treatments. They have simply not worked. In fact, the last experimental surgery that was tried on Ms. Mussika was a disaster, resulting in the loss of her sight in one eye. Thus, not only have the available treatments failed, they have presented grave risks. The preponderance of the evidence in this case clearly indicates that this patients' glaucoma is beyond the reach of available medical therapies.

This Court further notes that the Chief Administrator Law Judge of the DEA, Francis L. Young, recently recommended that marijuana be rescheduled to Schedule II of the Federal Controlled Substances Act to allow its medical uses. In making that determination, he noted the dangers of drugs used in treating glaucoma:

151

The adverse physical consequences resulting from the chronic use of commonly employed glaucoma control drugs include a vast range of unintended complications from mild problems like drug induced fevers, skin rashes, headaches, anorexia, asthma, pulmonary difficulties, hypertension, hypotension and muscle cramps to truly serious, even life-threatening complications including the formation of cataracts, stomach and intestinal ulcers, acute respiratory distress, increases and decreases in heart rate and pulse, disruption of heart function, chronic and acute renal disease, and bone marrow depletion.

Finally, each FDA-approved drug family used in glaucoma therapy is capable of producing a lethal response, even when properly prescribed and used. Epinephrine can lead to elevated blood pressure which may result in stroke or heart attack. Miotic drugs suppress respiration and can cause respiratory paralysis. Diuretic drugs so alter basic body chemistry, they cause renal stones and may destroy the patient's kidneys or result in death due to heart failure. Timolol and related beta-blocking agents, the most recently approved family of glaucoma control drugs, can trigger severe asthma attacks or cause death due to sudden cardia arrhythmias often producing cardiac arrest. *In the Matter of Marijuana Rescheduling Petition,* Kdt. No. 86-22, page 62 (U.S. Department of Justice, Drug Enforcement Administration, September 6, 1988).

It is appropriate for this Court to compare marijuana to the available glaucoma control therapies described above. The testimony in this case indicates that Ms. Mussika has legally and justifiably used marijuana for over a decade.

Thus, it is evident that marijuana is a medically less offensive alternative in Ms. Mussika's case. Not only have other glaucoma treatments failed, they are also more dangerous than marijuana.

Finally, the harm avoided in this case is clearly more serious than that performed to escape it. The harm Ms. Mussika is seeking to avoid is irreversible blindness. The undisputed testimony in this case demonstrates that without marijuana, Ms. Mussika will lose one of her senses and become blind. With marijuana, she has a chance to save or prolong her eyesight. And even with marijuana, she may still lose her eyesight. But this Court will not deny to her the one vehicle that may, with God's help, preserve her vision. It seems self-evident that any rational person under these circumstances would violate the law to save their sight. The law was not intended to punish people who make this type of a reasonable decision to save their senses.

The harm performed, is the violation of the marijuana laws. In Ms.

Mussika's case, she was growing marijuana for her personal use. In this regard, she was avoiding the black market in marijuana. Any harm from her marijuana possession and cultivation would be to herself. She avoid any harm to others by avoiding the black market. Even the harm to herself, on balance, is less weighty than the risk of blindness. As was noted in *United States v Randall, supra,* "[I]t is doubtful [marijuana's] slight, speculative and demonstrable harms could be considered more important than defendant's right to sight."

Indeed, the marijuana laws are the most disputed of the nation's drug laws. The actions of Ms. Mussika, cultivation of marijuana for personal use, have actually been legal in Alaska since 1975. In addition, thirty-four states have passed laws allowing the use of marijuana or its psychoactive ingredient, THC, as a medicine. Thus, while her actions were violations of the law, they are clearly not as damaging as her loss of sight.

One point I want to emphasize is that no one should interpret this decision as the Court giving a green light to the consumption of marijuana. That is not the message of this opinion. Marijuana use continues to be against the law. Ms. Mussika's circumstances, while not unique, are somewhat unusual. The message of this decision is that the law is flexible enough, and humane enough, to allow an individual to preserve her eyesight with a substance that is generally illegal. Indeed, this Court hopes that this decision and other decisions cited herein, will encourage legislators and regulators to correct the anomaly in the law which forces people trying to save their lives and senses into becoming criminals.

The government is charged with a responsibility to see that its laws are faithfully obeyed. And the Court does not dispute the government's legitimate role in regulating drugs. But the absolute prohibition against marijuana's use, even when such use may be therapeutically required to avoid grave and irreversible injury, appears on its face to be irrational. Such a sweeping, indiscriminate prohibition is not well founded.

Surely the Florida legislature, when it embraced such a total prohibition, could not have foreseen the possibility that a socially abused substance like marijuana might prove to be of critical medical value to patients confronting life-threatening and sense-threatening diseases.

In our haste to rightfully prosecute those who profit from the social trafficking and sale of illicit drugs we cannot become blind to the legitimate medical needs of those who are afflicted by incurable diseases and require appropriate medical care. To ignore the plight of such people renders the law callous to he most basic of all human rights; the right of self-preservation.

153

Finally, the Court is deeply disturbed by the broader implications of the testimony presented in this case. Medical necessity is a stringent, demand legal defense. The practice of medicine, however, cannot be predicated upon the legal requirements of the medical necessity defense if it is to preserve health in a rational, compassionate manner. As this decision, and the earlier decisions cited herein illustrate, marijuana has "an accepted medical use in treatment." Indeed, the evidence indicates marijuana is now being employed, albeit illegally, by patients throughout the United States. In the vast majority of such cases, these desperately ill people are being forced underground and away from urgently needed medical supervision to acquire marijuana.

This is an intolerable, untenable legal situation. Unless legislators and regulators heed these urgent human needs and rapidly move to correct the anomaly arising from the absolute prohibition of marijuana which forces law-abiding citizens into the streets—and criminality—to meet their legitimate medical needs, cases of this type will become increasingly common in coming years. There is a pressing need for a more compassionate, humane law which clearly discriminates between the criminal conduct of those who socially abuse chemicals and the legitimate medical needs of seriously ill patients whose welfare and very lives may depend on the prudent therapeutic use of those very same chemical substances.

### Conclusion

Upon the basis of the foregoing discussion, the Court finds that the defendant, Elvy Mussika, has established the defense of medical necessity. Accordingly, it is decision of this Court that she is not guilty of violation of Florida Statutes § 893.13(1)(a), and the defendant is hereby discharged.

DONE and ORDERED this 28th day of December, 1988.