

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35884-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH DEAN CLAYTON, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Joseph Clayton Sr. appeals from three convictions for unlawful possession of a firearm, challenging the use under our Privacy Act of a police body camera recording. We affirm.

## FACTS

The charges arose from a visit by law enforcement to a Spokane home. On the evening of October 7, 2016, multiple officers responded to the residence following a report of shots being fired. Mr. Clayton let officers in the residence and consented to a search. There were six people in the residence in addition to the officers who entered. Three officers had active body cameras recording the investigation, but none of the residents were advised of that fact.

An officer discovered two revolvers in a dresser and also observed bullet holes in a couch, wall, and the floor. Upon learning that Mr. Clayton was ineligible to possess the revolvers, officers arrested him for unlawful possession of the weapons. The prosecutor charged two counts of unlawful possession of a firearm based on the October arrest.

Clayton's girlfriend, Barbara Lawley, told officers that one month earlier, Clayton had fired a shot in the apartment that struck the couch on which she was sitting. Ultimately, the prosecutor charged Clayton with one count of second degree assault and one count of unlawful possession of a firearm for the September incident, as well as two counts of unlawful possession of a firearm for the two weapons recovered in October. The defense objected to the joinder of the September charges to the existing October counts, but the court permitted the amendment. The court also denied a motion to sever the counts at the conclusion of the State's case.

After conducting a CrR 3.6 hearing on a defense motion to suppress the recordings, the court permitted the video evidence only to the point where the officer discovered the guns and arrested Clayton. Body camera footage from one of the officers was played for the jury at trial.

Clayton testified at trial that an acquaintance, Jeff, had fired the shot at Lawley in June and that Clayton had momentarily possessed the weapon before returning it to the man. He also told jurors that he had purchased the two replica weapons for his mother at an estate sale because she collected old guns and wanted the weapons; he never owned or

possessed them. During the instruction conference, the court declined to give the defense's request for a necessity instruction, ruling that the defense had failed to make the necessary showing to obtain the instruction.

Defense counsel argued that his client had not assaulted Lawley and that her behavior in not immediately reporting to police and remaining with Clayton was inconsistent with her claim that he had shot at her a month earlier. He also argued that his client's momentary control over the weapons did not constitute dominion and control of them.

The jury acquitted Clayton on the assault charge, but convicted him of all three unlawful possession charges. After the court imposed standard range sentences for the offenses, Mr. Clayton timely appealed to this court. A panel considered his appeal without hearing argument.

ANALYSIS

Mr. Clayton raises three issues in his appeal. In order, we consider his contentions that the court erred in admitting the body camera evidence, in denying his motion to sever, and in refusing to instruct on necessity.

*Body Camera Recording*

Mr. Clayton argues that the police body camera recording was made in violation of the "Privacy Act," chapter 9.73 RCW, rendering the evidence inadmissible. Because

the police interaction with Mr. Clayton and his family was not a private conversation, there was no error.

The Privacy Act prohibits intercepting or recording a private communication unless all parties to the communication consent. RCW 9.73.030(1)(b). "Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state." RCW 9.73.050. "Whether a conversation is private is a question of fact but may be decided as a question of law where . . . the facts are not meaningfully in dispute." *State v. Modica*, 164 Wn.2d 83, 87, 186 P.3d 1062 (2008).

The Privacy Act does not define "private," but courts have previously found it means "'belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.'" *State v. Clark*, 129 Wn.2d 211, 225, 916 P.2d 384 (1996) (alterations in original) (quoting *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 189-90, 829 P.2d 1061 (1992)). A communication is private under the act when (1) the parties have a subjective expectation that it is private, and (2) that expectation is objectively reasonable. *Modica*, 164 Wn.2d at 88. Among other things, the subject matter of the calls, the location of the participants, the potential presence of third parties, and the roles of the participants are relevant to whether the call is private. *Clark*, 129 Wn.2d at 225-27.

4

The legislature has crafted some specific provisions that address the recording of conversations involving law enforcement. Two of those provisions are of particular interest to this case. Law enforcement may record people who have been arrested upon (i) informing the person that a recording is being made, (ii) stating the time of the beginning and ending of the recording in the recording, and (iii) advising the person at the commencement of the recording of his or her constitutional rights. In addition, (iv) the recording may be used only for valid police or court activities. RCW 9.73.090(1)(b).[1]

Vehicle mounted cameras may also make audio and visual recordings from video cameras mounted in police vehicles. RCW 9.73.090(1)(c).[2] Absent exigent circumstances, the person must be told that he or she is being recorded. *Id*. However, there is no requirement that the individual consent to the recording.

Here, the trial court concluded that the investigation did not involve a private conversation and that the provisions of RCW 9.73.090(1)(b) did not apply until Mr. Clayton was arrested. Mr. Clayton argues on appeal that the conversations in his home were private and should have been suppressed under the authority of RCW 9.73.030.[3]

---

[1] This provision originated with Laws of 1970 (2d Ex. Sess.), ch. 48.

[2] This provision was enacted by Laws of 2000, ch. 195, § 2.

[3] In his motion to reconsider the result of the CrR 3.6 hearing, Mr. Clayton argued that the recordings were made in violation of City of Spokane policy to advise citizens that they were being recorded and, thereby, obtain consent to the recording. Clerk's Papers at 234 et seq. He does not assert on appeal that the city policy could amend the Privacy Act or otherwise has application to this appeal.

Case law informs our analysis of this argument. This court has held that communications taking place in the street during an arrest were not private conversations. *State v. Flora*, 68 Wn. App. 802, 845 P.2d 1355 (1992). At issue in *Flora* was an attempted prosecution of a man and his friend for secretly recording the man's conversations with officers who were investigating whether there was a violation of a protection order. *Id*. This court ruled that there was no violation of RCW 9.73.030 because the conversation was not private. *Id*. at 805. This court rejected the idea that the officers performing official functions in the presence of a third person maintained a privacy interest under the Privacy Act. *Id*. at 806.

The Washington Supreme Court agreed with *Flora* in *Clark*. At issue in *Clark* were conversations between would-be drug sellers and strangers passing by on the street. 129 Wn.2d at 214. Acting under a court authorization, police recorded conversations between drug sellers and an undercover informant who consented to the recordings. *Id*. at 216-17. *Clark* stated a multi-factor test for determining whether a conversation is "private" under the Privacy Act. That test looked to the subjective expectations of the parties to the conversation, duration and subject matter of the conversation, location of the conversation and potential presence of third parties, and the role of the nonconsenting party and his relationship to the consenting party. *Id*. at 225-27. The court concluded that the drug sales communications, many of which happened in front of third parties or

otherwise were exposed to the general population, were not private conversations. *Id*. at 227-32.

The court made two observations that inform our decision in this case. First, while approving *Flora*, the *Clark* majority noted that generally "the presence of another person during the conversation means that the matter is not secret or confidential." *Id*. at 226. The court also noted that public transactions do not become private conversations merely because they take place in the home, a constitutionally protected area.[4] *Id*.

Also informative is *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 139 P.3d 1078 (2006). There, several consolidated cases presented the issue of the admissibility of car-mounted camera recordings. Citing to *Clark* and *Flora*, the court noted that "this court and the Court of Appeals have repeatedly held that conversations with police officers are not private." *Id*. at 460. It concluded its analysis of the topic by announcing: "we hold that traffic stop conversations are not private for purposes of the privacy act." *Id*.

An unusual variation on this problem was presented in *State v. Mankin*, 158 Wn. App. 111, 241 P.3d 421 (2010). There, some police officers being interviewed by a criminal defense attorney refused to consent to the recording of the interview. *Id*. at 115.

---

[4] The *Clark* majority relied, for this principle, on *State v. Hastings*, 119 Wn.2d 229, 830 P.2d 658 (1992). There, undercover officers had knocked on the door of a house, indicated their purpose was to purchase drugs, and were permitted into the dwelling. *Id*. at 231. *Hastings* rejected the defendant's argument that he had a reasonable expectation of privacy in selling drugs in his house. *Id*. at 232.

This court concluded that the pretrial interviews were not private conversations under the Privacy Act, noting that officers regularly are interviewed by defense attorneys and expect that statements made in the interviews might be used at trial. *Id*. at 118-19. Relying on *Flora*, the court determined that officers performing public duties were not engaging in private conversations. *Id*. at 119-21.[5]

With these decisions in mind, we now turn to Mr. Clayton's argument that his conversations in the home were private conversations that could not be recorded without his consent. The balance of the *Clark* factors establish that the conversations among the police and the various occupants of the apartment were not private.

Conversations with uniformed, on-duty law enforcement officers are typically not private conversations. *Flora*, 68 Wn. App. 802; *Lewis*, 157 Wn.2d 446. People understand that information they provide to officers conducting an investigation is going to turn up in written police reports and may be reported in court along with the observations made by the officers. Mr. Clayton never expressed a subjective belief that the conversations were private and no officer could claim such an interest.[6] *Flora*, 68 Wn. App. 802. The conversations took place in his apartment, a place where he had

---

[5] We need not address the question of whether a "private conversation" can exist under the statute if one side, the police, cannot have a privacy expectation in the conversation.

[6] There was no testimony at the CrR 3.6 hearing and Mr. Clayton never submitted an affidavit. The court viewed the videos and heard the argument of counsel.

some subjective expectation of privacy, but they also occurred in the presence of five others. The subject matter of the visit—a report of a gun being fired and subsequent search for the weapon—was not a private one. The relationship between the parties, investigators and the person being investigated, was not a personal one and does not suggest that the conversation was a private one. In sum, the *Clark* factors indicate that no private conversations took place within the meaning of the Privacy Act. The trial court correctly recognized that only when the police arrested Mr. Clayton did the provisions of RCW 9.73.090(1)(b) come into play. There was no reasonable expectation that the investigation involved a private matter. *Modica*, 164 Wn.2d at 88. The trial court did not err in denying the motion to suppress.

The Privacy Act does not address police body cameras. It is up to the legislature to extend the protections of the act to the use of those cameras if it so desires. In the meantime, we are not in a position to treat the on-duty public activities of law enforcement officers as private matters.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

9

*Severance*

Mr. Clayton argues that the court erred by joining the offenses and by denying his request at trial to sever them. Because joinder and severance involve slightly different tests for prejudice, arising from the fact that one is forward-looking and the other is backward-looking, we address the two claims separately. However, in neither circumstance did the trial court abuse its discretion.

Joinder is proper under CrR 4.3(a) when two offenses are of the same character or are based on connected acts. Severance is appropriate if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). The decision whether to sever charges is reviewed for abuse of discretion. *State v. Kalakosky*, 121 Wn.2d 525, 536, 852 P.2d 1064 (1993). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

It is the defendant's burden to establish abuse of discretion by showing that "a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990). Factors to be considered when analyzing prejudice in the context of a motion to sever include (1) whether the defendant was confounded in presenting separate defenses, (2) whether the

jury might infer a criminal disposition from the two offenses, and (3) whether the jury might cumulate evidence to find guilt where it would otherwise not. *Id.* In assessing prejudice pretrial when considering a joinder argument, courts consider four factors: (1) the strength of the State's case on each count, (2) the clarity of defense on each count, (3) court instructions to the jury to consider each count separately, and (4) the admissibility of evidence of other charges in the absence of joinder. *State v. Bluford*, 188 Wn.2d 298, 311-12, 393 P.3d 1219 (2017).

*Joinder.* The September and October events were "of the same character" for purposes of the permissive joinder rule. CrR 4.3(a). All four counts arose from the defendant's alleged use, possession, and control of firearms in his apartment. The trial court properly found that the events were of the same character when it allowed the amendment joining the September offenses with the existing October offenses. The remaining consideration is whether Mr. Clayton established prejudice.

The first factor, the strength of the State's case on each count, does not favor Mr. Clayton. Although the October charges were arguably stronger, having been captured in part on videotape, the essence of both cases was the credibility of Ms. Lawley with respect to her allegation that Mr. Clayton was the one who possessed the guns. The second factor, the clarity of defenses on each count, also favors joinder. In each instance,

the defense was lack of possession due to ownership by someone else or by momentarily

handling of another's weapon. The defenses were clear and consistent.

The third factor, the ability of the court to instruct the jury to consider each count

separately, also favored joinder. The offenses were distinct in time, allowing the court to

instruct that they be considered separately. The final factor, the cross admissibility of the

evidence, is largely neutral. While there is always prejudice from evidence of multiple

criminal acts, the evidence of each set of offenses may well have been admissible at each

trial. The possession of weapons in the apartment in October supported Lawley's claim

that Clayton had a weapon in the apartment a month earlier. Lawley's testimony that

Clayton had a weapon in September undercut his claim that he did not possess the

weapons found in the apartment in October.

On balance, the evidence did not establish prejudice. Hence, the court did not

abuse its discretion by allowing the September charges to be joined with existing October

offenses.

*Severance*. With respect to the trial motion to sever, Mr. Clayton argued that the

evidence in the two cases was not cross admissible, one factor for determining prejudice

in a *joinder* analysis. *Bluford*, 188 Wn.2d at 312. On appeal, he solely argues the four

*Bluford* factors. However, *Bythrow* recognizes three factors governing the determination

of prejudice in *severance* issues.[7]  Assuming, without deciding, that he did preserve a

separate severance argument for appeal, we will briefly discuss each of those factors.

The first factor is whether the defense is "confounded" by inconsistent defenses.

Mr. Clayton's defense was not.  His defense to each claim was the same—he did not

possess or own the firearms.  This factor does not favor severance.

The second factor is whether a jury might infer a "criminal disposition" from both

sets of charges.  Given that the evidence was cross admissible, the multiple charges do

not present a significant prejudice concern.  This factor is largely neutral.

The third factor is whether a jury might cumulate evidence against the defendant.

Again, multiple charges always present that risk, but since the evidence developed at trial

was admissible in each case and was not significantly prejudicial, this factor does not

favor severance.[8]

Severance of properly joined charges is necessary only when the prejudice to the

defendant outweighs the interest in judicial economy resulting from a single trial.

---

[7] We recognize that there is confusing language in some of the cases concerning the appropriate standard to review this claim.  That arises from the fact severance is both a remedy for improperly joined charges as well as a remedy for properly joined charges that eventually proved, at trial, too prejudicial to remain joined.

[8] The jury's acquittal on the assault count also presents post hoc evidence that it did not cumulate the evidence and convict Mr. Clayton because he possessed a criminal disposition.

*Bythrow*, 114 Wn.2d at 724. Here, the same witnesses testified to both incidents, a factor favoring judicial economy. Since the slight prejudice did not outweigh the interest in judicial economy, the trial court did not abuse it discretion by denying the motion to sever. *Id.*

*Necessity Instruction*

Mr. Clayton next argues that the trial court erred in refusing his necessity instruction. Once again, there was no abuse of discretion.

Trial courts have an obligation to provide instructions that correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-37, 439 P.2d 403 (1968). A court should give an instruction only if it is supported by substantial evidence. *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983).

The defense of necessity is recognized by Washington common law. That defense excuses criminal conduct when pressure brought on "by forces of nature" leads to a criminal act that avoids a greater harm. *State v. Gallegos*, 73 Wn. App. 644, 651, 871 P.2d 621 (1994); *State v. Turner*, 42 Wn. App. 242, 247, 711 P.2d 353 (1985); *State v. Diana*, 24 Wn. App. 908, 604 P.2d 1312, *overruled on other grounds by Seeley v. State*, 132 Wn.2d 776, 940 P.2d 604 (1997). Citing to the Model Penal Code, this court concluded in *Diana* that the defense would be available when the defendant established

14

that due to outside circumstances not of her own causing she committed an illegal act in order to avoid a greater harm. 24 Wn. App. at 913-14. The common law defense is unavailable when the legislature has provided a statutory defense. *Id.*

The defendant bears the burden of establishing the defense of necessity by a preponderance of the evidence. *Gallegos*, 73 Wn. App. at 651. The elements of the necessity defense are:

> Unlawful possession of a firearm is necessary when (1) the defendant reasonably believed he or another was under unlawful and present threat of death or serious physical injury, (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct, (3) he had no reasonable alternative, and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*State v. Parker*, 127 Wn. App. 352, 354-55, 110 P.3d 1152 (2005).[9]

The trial court doubted that the second element was established, but concluded that the third was not. Before turning to the propriety of that ruling, the initial inquiry is whether the defense presented *any* evidence of necessity as to the charged offense. The State charged the unlawful possession offense based on an incident that occurred in September 2016. Mr. Clayton's testimony about the "Jeff" incident was that it occurred

---

[9] The pattern instructions list the elements in a different order: (1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) harm sought to be avoided was greater than the harm resulting from a violation of the law, (3) the threatened harm was not brought about by the defendant, and (4) no reasonable legal alternative existed. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02, at 292 (4th ed. 2016).

in June 2016. Since his testimony did not even address the charged offense, there was no need for the trial court to even consider the issue. All of the parties, however, treated the testimony as if it were relevant to the charged crime and continue to do so on appeal. Accordingly, we will address the merits of this argument.

The trial court concluded that Mr. Clayton's action in picking up the gun and returning it to the shooter was not an act of necessity in light of more reasonable alternatives such as calling the police or secreting the weapon from the shooter. Whether this action truly implicates the third element (no reasonable alternative) or the first (reasonable apprehension of risk of death or serious injury)[10] is a debatable proposition. Viewed in its entirety, however, we agree with the trial court that Mr. Clayton's decision to take possession of the gun *and* return it to the shooter was unreasonable as a matter of law under the facts presented by Mr. Clayton's testimony. If he had taken possession of the gun and called the police or otherwise kept the gun apart from the shooter, it would be a question for the jury to decide. But the evidence presented here showed no necessity.

---

[10] We agree with the trial judge that the testimony that Jeff fired a shot indiscriminately in the apartment would satisfy the first element, but that action had taken place before Clayton committed the unlawful act of taking possession of the weapon. The act of returning the weapon to the shooter certainly undercuts the perceived danger presented by the shooter and appears more as assistance to the gunman than resistance.

No. 35884-4-III
*State v. Clayton*

The trial court correctly determined that the evidence did not support a necessity defense. There was no abuse of discretion in denying the requested instruction.

Affirmed.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.

17