[No. 2451-3. Division Three. December 20, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. SAMUEL
DIANA, *Appellant.*

*Michael Hemovich* and *Hemovich, Smith & Nappi,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark Colwell, Deputy,* for respondent.

GREEN, C.J.—The defendant appeals his felony conviction for possession of a controlled substance, claiming that the marijuana seized by the police should have been suppressed. Alternatively, he asks that this court direct the trial court to take additional evidence to determine whether his possession of marijuana was justified by medical necessity. We affirm the denial of the defendant's motion to suppress, but remand for a determination of the issue of medical necessity.

In the early morning of January 18, 1977, the Spokane police received a call concerning a domestic disturbance at the defendant's northside home. Upon their arrival at the home, they saw defendant's wife in the front yard. She told the officers that her husband had gone "crazy", had struck her, and had "lots of guns." The officers approached the house and observed the defendant through the living room window. No guns were evident from this vantage point. They saw the defendant on the floor, and heard him moaning and apparently talking to someone. According to the police, they suspected that something was wrong with him and, therefore, immediately entered the house to aid him. They secured the defendant, who was on the floor, and at

this time observed marijuana in plain view under the adjacent couch. Defendant was arrested and charged with possession of the controlled substance. He moved to suppress the marijuana. In support of this motion, he stated by affidavit that he was sitting on the floor of his living room talking on the telephone to his brother, an attorney, when the police entered. The motion was denied, and he was convicted of the offense.

The defendant contends the court erred in denying his motion to suppress. He urges (1) the court improperly considered the testimony of his wife, as a basis for probable cause, in violation of the husband–wife privilege, RCW 5.60.060,[1] and (2) the officers entered the house in violation of the knock and wait rule, RCW 10.31.040.[2] We find no error.

■ It has long been the rule that one spouse cannot testify as a witness against the other without the other's consent. RCW 5.60.060; *State v. Kephart*, 56 Wash. 561, 106 P. 165 (1910). This statutory privilege is a codification of the common law which applies to testimony given in court. 8 J. Wigmore, *Evidence* § 2232, at 225–26 (McNaughton rev. ed. 1961). It does not apply where the statements are offered to explain the actions of a third party rather than as proof of the matter stated. *State v. Osborne*, 18 Wn. App. 318, 322, 569 P.2d 1176 (1977), *review denied*, 89 Wn.2d 1016 (1978); *see also State v. Gillespie*, 18 Wn. App. 313, 315, 569 P.2d 1174 (1977). Here, the statements of defendant's wife were relied upon by the officers to establish probable cause to enter the house. This is analogous to the situation in

---

[1] RCW 5.60.060 states the following persons shall not be examined as witnesses:

"(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband . . ."

[2] RCW 10.31.040 provides:

"To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other enclosure, if, after notice of his office and purpose, he be refused admittance."

*Osborne.* There, the court upheld a search warrant based upon an officer's affidavit containing statements made to the officer by defendant's wife. The court stated, at page 322:

> We hold the privilege is not applicable to the issuance of a search warrant. It is clear that evidence that would not be competent or admissible at trial may nevertheless furnish "probable cause" for the issuance of a search warrant.

Likewise, there is no violation of the privilege here.

 Nor do we find a violation of the knock and wait rule. It is well recognized that failure to comply with this rule may be justified where exigent circumstances exist. *State v. Young,* 76 Wn.2d 212, 217, 455 P.2d 595 (1969); *State v. Campbell,* 15 Wn. App. 98, 100, 547 P.2d 295 (1976). Whether exigent circumstances exist is to be determined on a case–by–case basis. *State v. Young, supra* at 214; *State v. Johnson,* 11 Wn. App. 311, 522 P.2d 1179 (1974). Police officers must be able to point to specific, articulable facts and the reasonable inferences therefrom which justify the intrusion. *State v. Sanders,* 8 Wn. App. 306, 310, 506 P.2d 892 (1973).

Here, the defendant's wife, standing in front of her home in her housecoat at 3 a.m. on a cold January morning, told police officers that the defendant had gone "crazy", struck her, and "had guns." Under these circumstances, the police had a duty to investigate to insure that the defendant did not harm himself or others. When they did investigate by looking in the window of the home, they saw the defendant lying on the floor, moaning, justifying an inference that the defendant was in need of aid. Considering the totality of the circumstances, the police acted reasonably in entering the house immediately without first stopping to comply with the knock and wait rule.

*State v. Hatcher,* 3 Wn. App. 441, 475 P.2d 802 (1970) and *State v. Johnson, supra,* relied upon by the defendant, are distinguishable. In *Hatcher,* a drug case, the officers viewed the defendant through an open window sitting in a

chair asleep. Here, the defendant was moaning, in apparent need of aid. Also, the officers in *Hatcher* were not concerned about the presence of guns, as they were in this case. In *Johnson,* the police had a full view of the defendant through an open door, yet entered without knocking. *Johnson* may be further distinguished on the basis that, contrary to this case, no apparent emergency existed.

In view of our holding, we need not reach the State's argument that the defendant's wife consented to the entry and thereby waived the knock and wait rule.

Next, we consider the defendant's alternative request that we remand the case for a determination of whether his use of marijuana was medically necessary and, therefore, justified his possession. At trial, he stated that he was a victim of multiple sclerosis and further testified:

Q. Now, what was the reason that you had the marijuana there? Will you tell the court?

A. Well, I believe in marijuana. I believe it is a primary sedative for frustrations attached to MS. It helps me sometimes. I find with MS it is hard to eat. It helps me eat. I have been conducting several experiments for years and years. I am not really what you could call a doctor, and probably shouldn't have been experimenting, but needless to say I got 75 percent of what it takes to conduct such experiments. Like I have MS which I was working on, and it helps me. It helps me sedate my nerves. It helps me eat. It poses no problem to my equilibrium. It helps me sleep when I have trouble sleeping. It has been used in so many other medical cases with wide acceptance, that I thought it is something that should be ventured into with MS.

. . .

Q. Tell us whether or not MS people have periodicals and have done some research, besides yourself, relative to the use of marijuana in MS patients.

A. Yes, I have heard of the MS chapter on the East Coast right now petitioning the courts to allow their patients to use marijuana.

No argument was presented to the trial court on the defense of medical necessity, and the trial judge, who sat as the trier of fact, did not enter a finding on this point.

Now, on appeal, defendant makes a detailed argument that marijuana is the only reasonably effective drug for relief of the disabling spasticity associated with multiple sclerosis. He proposes on remand to prove:

1. His experience is supported by recent medical research, including the results of a study of 50 patients prepared by Dr. Dennis Petro of Marietta, Pennsylvania.

2. He used the marijuana because the drugs which his doctors legally prescribed for him had unpleasant side effects and were not as effective as marijuana in relieving his symptoms; and

3. He attempted, before and after his trial, to obtain marijuana legally through his physicians but they refused his request, based solely upon the illegal status of the drug.

The State counters with the general rule that an appellate court will not consider arguments that have not first been presented to the trial court. However, RAP 12.2[3] authorizes an appellate court to take any action required by the merits of the case and the interests of justice. Since defendant's trial, substantial medical and legal developments relating to the medicinal attributes of marijuana have been widely publicized. For this reason, we believe that justice requires that we consider the defendant's argument.

Generally, necessity is available as a defense when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law. The defense is not applicable where the compelling circumstances have been

---

[3]RAP 12.2 reads:

"The appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require. . . ."

brought about by the accused or where a legal alternative is available to the accused. W. LaFave & A. Scott, *Handbook on Criminal Law* 381–83, 386 (1972). Section 3.02 of the Model Penal Code (Proposed Official Draft 1962) formulates the elements of necessity as follows:

Justification Generally: Choice of Evils.

(1) Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable, provided that:

(a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

(b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this Section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

The common law has long recognized the existence of a defense of necessity. *United States v. Holmes,* 26 F. Cas. 360 (C.C.E.D. Pa. 1842); *United States v. Ashton,* 24 F. Cas. 873 (C.C.D. Mass. 1834). *See also Medical Necessity as a Defense to Criminal Liability: United States v. Randall,* 46 Geo. Wash. L. Rev. 273, 276–78 (1978) for comprehensive citations to other cases which discuss this defense. In recent years, the courts have most frequently confronted the necessity doctrine in prison escape cases. *People v. Lovercamp,* 43 Cal. App. 3d 823, 118 Cal. Rptr. 110 (1974); *People v. Unger,* 33 Ill. App. 3d 770, 338 N.E.2d 442 (1975); *State v. Stuit,* __ Mont. __, 576 P.2d 264 (1978); *State v. Horn,* 58 Haw. 252, 566 P.2d 1378 (1977); *People v. Robertson,* 36 Colo. App. 367, 543 P.2d 533 (1975).

Although the defense of necessity has been variously applied, only one trial court decision has been called to our

attention where the defense was recognized to a charge of possession of marijuana. That case is *United States v. Randall,* 104 Daily Wash. L. Rptr. 2249 (D.C. Super. Ct. Nov. 24, 1976). There, a defendant grew marijuana plants and used them to treat his own glaucoma. Expert testimony revealed that conventional glaucoma medications were ineffective and that defendant's experimental use of marijuana normalized inner-ocular pressure and lessened visual distortions caused by the disease. In determining whether the evil to be avoided by the defendant's act was greater than that inherent in the possession and personal use of marijuana, the court balanced the defendant's interest in preserving his sight against the government's interest in controlling the drug. The court concluded that Mr. Randall's right to preserve his sight outweighed the government's interest in outlawing the drug. Special emphasis was placed upon the importance of an individual's right to preserve and protect his own health and body. *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, 727 (1973); *Doe v. Bolton,* 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739 (1973) (abortion cases). *See also Rutherford v. United States,* 399 F. Supp. 1208 (W.D. Okla. 1975), in which a federal district court decided that a cancer patient's right to treatment outweighed the government's interest in banning laetrile.

The wisdom of the *Randall* decision was recognized by the legislature in our state when it enacted the Controlled Substances Therapeutic Research Act, Laws of 1979, ch. 136, effective March 27, 1979. That legislation recognizes marijuana as a medicinal drug and makes it available under controlled circumstances to alleviate the effects of glaucoma and cancer chemotherapy. The patient must be certified to the State Board of Pharmacy by a licensed physician. In addition, under the act other disease groups may be included if pertinent medical data is presented to the Board.

We believe that the defendant here should be given the opportunity to demonstrate the alleged beneficial effect, if

any, of marijuana on the symptoms of multiple sclerosis. Accordingly, we remand his case to the trial court, here the trier of fact, for determination of whether medical necessity exists.

In making that determination, the court should refer to the authorities cited in this opinion. To summarize, medical necessity exists in this case if the court finds that (1) the defendant reasonably believed his use of marijuana was necessary to minimize the effects of multiple sclerosis; (2) the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) no drug is as effective in minimizing the effects of the disease. To support the defendant's assertions that he reasonably believed his actions were necessary to protect his health, corroborating medical testimony is required. In reaching its decision, the court must balance the defendant's interest in preserving his health against the State's interest in regulating the drug involved. Defendant bears the burden of proving the existence of necessity, an affirmative defense, by a preponderance of the evidence. *People v. Lovercamp, supra; People v. Condley,* 69 Cal. App. 3d 999, 138 Cal. Rptr. 515, 519 (1977); *James v. United States,* 350 A.2d 748 (D.C. App. 1976), *cert. denied,* 429 U.S. 872 (1976); *Patterson v. New York,* 432 U.S. 197, 225 n.9, 53 L. Ed. 2d 281, 97 S. Ct. 2319, 2323 n.9, 2327 (1977). If the court determines by a preponderance of the evidence that the defendant's actions were justified by medical necessity, the conviction should be set aside. On the other hand, if the defense is not proved, the conviction shall stand.

In conclusion, we emphasize that medical necessity, as a defense to possession, exists only under very limited circumstances not present in the routine case involving controlled substances.

Remanded for further proceedings in accordance with this opinion.

McINTURFF and ROE, JJ., concur.