[No. 6520-1-III.   Division Three.   December 5, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. THELMA M. TURNER, *Appellant.*

*William Edelblute,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Carl L. Johnson* and *James L. Nagle, Deputies,* for respondent.

GREEN, C.J.—Thelma M. Turner appeals her conviction of possession of contraband in the second degree. The issues presented focus on the court's refusal to give jury instructions on the defenses of duress and necessity.

Although Mrs. Turner admitted possessing the contraband, she offered the following evidence explaining the possession was under duress and necessity. The record shows that Mrs. Turner's husband was incarcerated at the penitentiary in Walla Walla. When she first arrived in Walla Walla, her husband introduced her to Marnie Rigsby as a possible roommate. Mrs. Rigsby's husband was also an inmate in the penitentiary. During November 1983 Mrs. Rigsby, who knew of Mrs. Turner's frequent visits to the penitentiary, approached her about carrying balloons of marijuana into the prison. She told Mrs. Turner that if she refused to do so her husband would be hurt.

On December 8, after Mrs. Turner entered the prison for a visit, she was followed into a bathroom by Mrs. Rigsby where threats about hurting her husband were renewed. Mrs. Rigsby gave Mrs. Turner four colored balloons containing marijuana to pass on to Mrs. Rigsby's husband. She received the balloons believing Mrs. Rigsby was capable of carrying out the threats. This belief was based on a statement by Mrs. Rigsby that Mrs. Turner's husband had already purposely been hurt in a basketball game; Mrs.

Rigsby had friends in the wing where Mr. Turner was held; and some "biker friends" of Mrs. Rigsby had intimidated Mrs. Turner in the past. She also believed her husband might be stabbed if she reported the matter to the authorities. Consequently, after receiving the balloons, Mrs. Turner placed them beneath her thin white sweater where they would be visible to and noticeable by the authorities, *i.e.*, she did not try to conceal them. Instead she testified she hoped they would be discovered and she would be arrested. This occurred.

Two days after her arrest, Mrs. Turner was awakened by a police officer about 1:15 a.m. The officer told her that a passerby discovered a fire on her front porch and put it out before any damage was done. A paper was discovered near the fire with letters from newspaper clippings pasted on it which read as follows: "If you think it[']s over [y]our wrong lady Husband is next if you open your mouth & we won[']t stop there Your son will always be [in] our reach". The investigating officer testified Mrs. Turner was reluctant at first to reveal the background concerning the prior threats and the name of Mrs. Rigsby, but eventually did so. She testified her reluctance stemmed from being worried about the safety of her son who was living with his grandmother. A week or so after the fire, her roommate received a letter telling her to get away from Mrs. Turner or she and her son could get hurt.

At the conclusion of the evidence, Mrs. Turner proposed instructions on duress and necessity. The court declined to give them. She contends this was error and resulted in her conviction.

■ The defense of duress is covered by RCW 9A.16.060:

Duress. (1) In any prosecution for a crime, it is a defense that:

(a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or another would be liable to immediate death or immediate grievous bodily injury; and

(b) That such apprehension was reasonable upon the part of the actor; and

(c) That the actor would not have participated in the crime except for the duress involved.

. . .

(3) The defense of duress is not available if the actor intentionally or recklessly places himself in a situation in which it is probable that he will be subject to duress.

Duress is an affirmative defense. It should not be considered by the jury unless there is substantial evidence to support it. *State v. McKinney,* 19 Wn. App. 23, 25, 573 P.2d 820 (1978). *See also State v. Niemczyk,* 31 Wn. App. 803, 807, 644 P.2d 759 (1982). The court's refusal to give the duress instruction focused on the statutory requirement of apprehension of "immediate death or immediate grievous bodily injury". On the facts presented, the court did not believe there was sufficient evidence to create a jury question on the immediacy requirement. We disagree.

Neither the statute nor case authority define the term "immediate" for purposes of the duress defense. According to *Bouvier's Law Dictionary* 1494 (3d rev. ed. 1914), immediate and immediately mean:

Immediate. . . . Present; without delay or postponement. Strictly it implies *not deferred by any lapse of time,* but as usually employed, it is rather within reasonable time having due regard to the nature and circumstances of the case. This word [immediate] and immediately . . . are of no very definite signification and are much dependent on the context. . . .

. . .

Immediately. The words "forthwith" and "immediately" have the same meaning. They are stronger than the expression "within a reasonable time," and imply prompt, vigorous action, without any delay, and whether there has been such action is a question of fact, having regard to the circumstances of the particular case[.]

*See also* Black's Law Dictionary 884 (4th rev. ed. 1968). In our view, the question of whether a threat of *immediate* death or *immediate* grievous bodily injury occurred is generally a question of fact for the jury.

This conclusion was reached in *People v. Maes,* 41 Colo. App. 75, 77, 583 P.2d 942, 944 (1978), where the court summarized its view of the law in this area, stating:

It has generally been held that where the threat of unlawful use of force is alleged, the defense is available only if the threat is one of present, impending, and imminent use of force, and that a threat of future injury is not enough. *People v. Harmon,* 53 Mich. App. 482, 220 N.W.2d [2]12, *aff'd,* 394 Mich. 625, 232 N.W.2d 187 (1975); *see generally,* Annot. 60 A.L.R.3d 678; Annot. 40 A.L.R.2d 908; 1 *Wharton's Criminal Law and Procedure,* § 123 (R. Anderson ed. 1957). However, the question whether a threat is imminent is, in all but the clearest of cases, to be decided by the trier of fact after considering all of the surrounding circumstances, including the defendant's opportunity and ability to avoid the harm. *People v. Harmon, supra.*

Unlike a generalized fear of retaliation, which did not warrant a choice of evils instruction in *People v. Robertson,* 36 Colo. App. 367, 543 P.2d 533 (1975), the defendant here testified that he was specifically threatened with injury to himself and to his family if he refused to hold the heroin or if he reported the incident to the authorities. Defendant's failure to identify the inmates who threatened him goes to the credibility of the explanation, rather than to the submissibility of the defense to the jury. *See Pittman v. Commonwealth,* 512 S.W.2d 488 (Ky. App. 1974).

In that case, the defendant, an inmate in the state penitentiary, was charged with possession of heroin following a shakedown search. Defendant testified three other inmates had asked him to "hold their stuff . . . until payday'" and if he did not do so they would hit him and if he reported it they would "'have somebody from the outside do something to [his] wife and son.'" *Maes,* at 943. The *Maes* case is similar to the facts in the case at bench. There the Colorado court held the question of "immediate" harm was for the jury.

Cases from other jurisdictions and treatises support the conclusion that when the defense of duress is asserted, immediacy of the danger is to be determined by the trier of

fact based on an assessment of all the circumstances. *People v. Harmon,* 53 Mich. App. 482, 220 N.W.2d 212 (1974), *aff'd,* 394 Mich. 625, 232 N.W.2d 187 (1975); *State v. Toscano,* 74 N.J. 421, 378 A.2d 755 (1977); 2 P. Robinson, *Criminal Law Defenses* § 177(e), at 359 (1984). *See also* Newman & Weitzer, *Duress, Free Will and the Criminal Law,* 30 S. Cal. L. Rev. 313, 328 (1957); Perkins, *Impelled Perpetration Restated,* 33 Hastings L.J. 403, 414 (1981).

Thus, we find the circumstances presented by Mrs. Turner were sufficient to allow the defense of duress to go to the jury. The jury could have decided this was a threat of "immediate" injury or death if it believed Mrs. Turner's testimony. Mrs. Rigsby could have immediately conveyed word to the expectant inmates and set the stage for injury to Mrs. Turner's husband. In our view, the Legislature did not intend the duress defense to be limited to instances where the refusal would result in simultaneous execution of the threat. Thus, we conclude the court erred by refusing to instruct on the defense of duress.

However, the court properly declined to instruct the jury on the defense of necessity. This defense is available "when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law." *State v. Diana,* 24 Wn. App. 908, 913, 604 P.2d 1312 (1979). "With the defense of necessity, the pressure must come from the physical forces of nature . . . rather than from other human beings." W. LaFave & A. Scott, *Criminal Law* § 50, at 381 (1972). Here the threats to Mrs. Turner came from another human being.

Reversed and remanded.

MUNSON and THOMPSON, JJ., concur.

Review denied by Supreme Court February 7, 1986.