[No. 30042-3-I. Division One. April 11, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. FELIX JOSEPH GALLEGOS, *Appellant*.

---

*Kathleen Anne Barry* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ann M. Foerschler, Deputy,* for respondent.

SCHOLFIELD, J. — Felix Gallegos appeals the judgment and sentence entered against him for one count of attempting to elude a pursuing police vehicle in violation of RCW 46.61.024. He argues that the trial court erred by excluding evidence about his state of mind and his affirmative defense of necessity, refusing to instruct the jury on the necessity

defense, and refusing to instruct the jury on the lesser included offense of refusal to cooperate with an officer. We affirm.

On the evening of March 18, 1991, Felix Gallegos and his girlfriend, Cheryl Brock, went to Elmer's Pub in White Center. Brock's friend, Leigh Ann Keating, was also there with her boyfriend, Mike. At some point, Keating left the tavern. When Gallegos, Brock, and Mike left later, they went to Keating's house to look for her. She was not there, but she telephoned Brock a while later. Gallegos overheard the conversation and was aware that something was wrong. Brock told Gallegos that several people were harassing Keating and following her in a car outside Elmer's Pub. Brock asked Gallegos to drive back to the tavern to find Keating. Gallegos, believing the situation was very serious, got into his car and drove along Ambaum Boulevard toward the tavern.

King County Police Officer Adams was in a marked patrol car along Ambaum Boulevard and saw Gallegos exceeding the 35 m.p.h. speed limit. Officer Adams followed and signaled with his flashing blue lights for Gallegos to stop. After pulling off the road, Gallegos immediately got out of his car and approached the patrol car. Officer Adams noticed that Gallegos looked "either excited or angry" and heard him yell, "I am all right. You can just follow me home." Officer Adams ordered Gallegos to return to his car. According to Officer Adams, Gallegos yelled an obscenity and something else inaudible, then sped off in his car over a sidewalk and onto Ambaum Boulevard.

Officer Adams followed with his blue lights still flashing and his siren operating, but Gallegos continued driving. He saw Gallegos drive through six red lights and cause two cars to brake abruptly to avoid colliding with him. Officer Adams briefly pursued Gallegos until he received an order from the police dispatcher to discontinue the chase. Thereafter, he followed at a slower pace. Officer Warfield, in another patrol car along Ambaum, saw Gallegos' car speeding and also began following him. Gallegos turned off

Ambaum Boulevard and into a parking lot across the street from Elmer's Pub, and the two officers pulled up behind him.

As Officer Adams approached him, Gallegos got out of his car and said in an angry tone, "What did I do? You want to arrest me, huh?" Gallegos gestured belligerently and struggled with Officer Adams until the officers placed him in handcuffs and arrested him. Gallegos then said Keating was in trouble in the tavern. Officer Warfield checked inside the tavern but was told Keating had left 2 hours earlier. Gallegos made the following statement to Officer Adams:

> I knew you were behind me, because your revolving top lights were on. So, I pulled over and stepped out of the car. You told me to get back into my car. I don't know if you heard me, but I yelled that a friend of mine was in trouble and that I was taking off. I got into my car and I took off. I headed for Elmer's Pub. My girlfriend's girlfriend called us and was crying and said she needed help and the phone was cut off. I knew that I would be in trouble for taking off. I thought that it was more important to find this friend than worry about my safety. This statement is true, dictated by me and written by Officer Adams.

Gallegos was charged by information with one count of attempting to elude a pursuing police vehicle in violation of RCW 46.61.024.

The two defenses Gallegos intended to raise during trial were that he never intended to elude the police, and his action was legally justified under the necessity defense. The State moved in limine to exclude evidence relating to Gallegos' proposed necessity defense. The court granted that motion, ruling that the defense was not available to Gallegos because he failed to offer sufficient evidence on which to base a necessity instruction. The State also moved to exclude the testimony of Brock and Keating as irrelevant. The trial court denied that motion, but said it would sustain objections to questions regarding Gallegos' state of mind before the incident for lack of relevance.

The testimony of Officers Adams and Warfield was consistent with the above facts. In addition, Brock testified about Keating's telephone call on the night Gallegos was

arrested. Brock also stated that Gallegos left to find Keating as soon as she told him Keating was being harassed by a group of people near the tavern. According to Gallegos' testimony, he believed Keating's situation was serious and she needed his help. When Officer Adams first stopped him, he tried to explain that a friend was in trouble. After the officer ordered him to return to his car, Gallegos became impatient and yelled he was going to leave if the officer would not help him. He testified that he knew Officer Adams would follow him and that was what he wanted so the officer would help find Keating. After he drove off, Gallegos saw Officer Adams following with the patrol car's lights flashing and he heard the siren operating. He acknowledged that he may have gone through one red traffic light on Ambaum.

After both parties rested, Gallegos asked the court to instruct the jury on the necessity defense and on the lesser included offense of refusal to cooperate with an officer. The court refused both instructions. The jury found Gallegos guilty as charged. Gallegos appeals the subsequent judgment and sentence entered against him.

### Intent

We first decide whether "intent to elude" is an element of RCW 46.61.024 which would have required the trial court to allow evidence of Gallegos' state of mind the night he was arrested. Gallegos argues that "intent to elude" must be an element of RCW 46.61.024 because the statute includes the language "attempting to elude", and the definition of "attempt" includes the element of intent.

RCW 46.61.024 reads in part:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

As *State v. Stayton*, 39 Wn. App. 46, 691 P.2d 596 (1984), *review denied*, 103 P.2d 1026 (1985) explained:

The first element [of RCW 46.61.024] is that a uniformed police officer whose vehicle is appropriately marked must give the potentially errant driver of a motor vehicle "a visual or audible signal to bring the vehicle to a stop . . ." Next, the driver must be a person who "wilfully fails or refuses to immediately bring his vehicle to a stop . . ." The willful failure to do so implies knowledge that a signal has been given. The third element is that, "while attempting to elude a pursuing police vehicle," the driver "drives his vehicle in a manner indicating a wanton [or] wilful disregard for the lives or property of others . . ." All three elements must occur in sequence before the crime has been committed.

*Stayton*, 39 Wn. App. at 49. Once the State presents evidence supporting the inference that the defendant drove with wanton or willful disregard, the defendant may rebut that inference with evidence pertaining to his mental state at the time of the incident. *State v. Mitchell*, 56 Wn. App. 610, 616-17, 784 P.2d 568 (1990); *see also State v. Sherman*, 98 Wn.2d 53, 58-59, 653 P.2d 612 (1982) (evidence indicating wanton or willful disregard will typically be circumstantial; evidence showing, for example, that the defendant had a seizure while driving would rebut an inference of wanton or willful disregard). With regard to criminal attempt, "[a] person is guilty of an attempt to commit [a] crime if, *with intent to commit a specific crime*, he does any act which is a substantial step toward the commission of that crime." (Italics ours.) RCW 9A.28.020(1).

 Gallegos' argument has not been considered previously by Washington courts. For it to succeed, "elud[ing] a pursuing police vehicle" must be a "specific crime" as contemplated under the definition of criminal attempt. It is not. RCW 46.61.024 is a "resisting arrest" statute (*State v. Mather*, 28 Wn. App. 700, 703, 626 P.2d 44 (1981)) designed to address the dangers of high-speed chases. *State v. Malone*, 106 Wn.2d 607, 611, 724 P.2d 364 (1986). Under the statute, "[n]o crime is committed if a defendant merely fails to immediately stop his vehicle. He must also engage in conduct that indicates a wanton [or] wilful disregard for the life and property of others." *Mather*, 28 Wn. App. at 703. Thus, eluding a pursuing police vehicle is not, in itself, a "specific crime" prohibited by

RCW 46.61.024; the statute instead makes it a specific crime to drive a vehicle in a manner indicating wanton or willful disregard *while* attempting to elude a pursuing police vehicle. The word "attempt" in the statute has nothing to do with criminal attempt and must be given its ordinary meaning of "to try". *see State v. Raymer*, 61 Wn. App. 516, 519, 810 P.2d 1383 ("[s]tatutory terms are given their ordinary and usual meaning"), *review denied*, 117 Wn.2d 1022 (1991). Hence, the trial court did not err by excluding or limiting evidence of Gallegos' state of mind because "intent" is not a component of the element of "attempting to elude a pursuing police vehicle" in RCW 46.61.024.[1]

## NECESSITY DEFENSE

Gallegos next contends that the trial court erred by granting the State's motion in limine to exclude evidence of necessity and refusing to instruct the jury on a necessity defense. He argues that evidence of his need to flee from Officer Adams to help Keating is relevant because he had the right to raise the affirmative defense of necessity. We disagree.

■■ The necessity defense is available to a defendant when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law. The defense is not applicable where the compelling circumstances have been brought about by the accused or where a legal alternative is available to the accused.

*State v. Diana*, 24 Wn. App. 908, 913-14, 604 P.2d 1312 (1979). The "pressure" must come from the physical forces of nature, not from other human beings, for a defendant to

---

[1]We note that even if the Legislature had intended to incorporate the definition of criminal attempt into RCW 46.61.024, Gallegos failed to present any evidence that he did *not* intend to elude the pursuing police vehicles. "To elude" means "to avoid slyly or adroitly (as by artifice, stratagem, or dexterity) : evade". *Webster's Third New International Dictionary* 738 (1969). At best, the evidence shows that Gallegos drove away from Officer Adams so he would follow to where Keating likely would be. That evidence indicates Gallegos must have intended to elude Officer Adams, at least temporarily, as a means of enticing him to continue pursuit.

argue the necessity defense. *State v. Turner*, 42 Wn. App. 242, 247, 711 P.2d 353 (1985), *review denied*, 105 Wn.2d 1009 (1986); Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 50, at 381 (1972). In addition, to paraphrase *Diana*, the defendant must prove by a preponderance of the evidence that (1) he or she reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law, and (3) no legal alternative existed. *See Diana*, 24 Wn. App. at 916.

Here the alleged "pressure" under which Gallegos acted resulted not from a physical force of nature but from his friend's need for assistance. Therefore, as a matter of law, the defense of necessity was not available to Gallegos. *Turner*, 42 Wn. App. at 247; *Diana*, 24 Wn. App. at 913-14. Further, even if the defense had been available, Gallegos failed to present sufficient evidence to raise it despite testimony about the objective events preceding Gallegos' arrest. His belief that he had to flee from Officer Adams so the officer would follow him and help him assist Keating was unreasonable. Simply waiting a few minutes and informing Officer Adams about the situation would have allowed the officer to take action necessary to find Keating and protect her. Also, Gallegos failed to show that the possible harm to Keating was any greater than the danger in which he placed other drivers due to his reckless driving. Finally, Gallegos had the legal alternative of asking the officer to use police resources to locate and assist Keating. Because, as a matter of law, the necessity defense was unavailable and because Gallegos failed to prove by a preponderance of the evidence the three prerequisites to the defense, the trial court properly exercised its discretion to exclude irrelevant and cumulative evidence. It follows that it was not error to refuse to instruct the jury on necessity.

### LESSER INCLUDED CRIME

Finally, we decide whether the trial court erred by refusing to instruct the jury on the lesser included crime of refusal to cooperate with an officer. Gallegos contends that

the court erred because the two conditions for giving the instruction were satisfied.

■ Before the trial court may instruct on a lesser included offense, each element of that offense must be a necessary element of the offense charged, and the evidence in the case must support an inference that only the lesser crime was committed. *State v. Speece*, 115 Wn.2d 360, 362, 798 P.2d 294 (1990). The State concedes that the crime of refusing to cooperate is a lesser included offense of attempting to elude a pursuing police vehicle. *See* RCW 46.61.021-.022;[2] *State v. Brown*, 40 Wn. App. 91, 96 n.3, 697 P.2d 583, *review denied*, 103 Wn.2d 1041 (1985). It argues, however, that Gallegos failed to offer evidence that he committed only the lesser included offense instead of the crime of attempting to elude.

> It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.

*State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *disapproved on other grounds in State v. Blair*, 117 Wn.2d 479, 487, 816 P.2d 718 (1991). Thus, the test is "whether there is evidence supporting an inference that the defendant is guilty of the lesser offense *instead of* the greater one." *State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515

---

[2]RCW 46.61.021 reads:

"(1) Any person requested or signaled to stop by a law enforcement officer for a traffic infraction has a duty to stop.

"(2) Whenever any person is stopped for a traffic infraction, the officer may detain that person for a reasonable period of time necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction.

"(3) Any person requested to identify himself to a law enforcement officer pursuant to an investigation of a traffic infraction has a duty to identify himself, give his current address, and sign an acknowledgment of receipt of the notice of infraction."

RCW 46.61.022 reads:

"Any person who wilfully fails to stop when requested or signaled to do so by a person reasonably identifiable as a law enforcement officer or to comply with RCW 46.61.021(3), is guilty of a misdemeanor."

(1992). Evidence that merely supports an inference that the defendant is guilty or not guilty of the charged offense is not enough to warrant giving a lesser included offense instruction. *Bergeson*, 64 Wn. App. at 369.

The evidence clearly supports the inference that Gallegos drove with wanton or willful disregard for others because he drove through six red lights and caused two oncoming vehicles to halt abruptly to avoid colliding with him. The evidence of his intent to assist Keating does not rebut the manner in which he drove as he tried to elude the police. That evidence merely showed his alleged motive for fleeing. *See Brown*, 40 Wn. App. at 97 (defendant charged with attempting to elude failed to rebut the inference that he drove with wanton or willful disregard because the evidence simply showed the motive for his flight as fear of police brutality). Because Gallegos failed to rebut the inference of wanton or willful disregard, and that inference is an element of the crime of attempting to elude, Gallegos has failed to prove he was guilty of the lesser included offense of refusal to cooperate instead of the greater offense of eluding a pursuing police vehicle. Consequently, the trial court did not err by refusing to instruct the jury on the lesser included offense.[3]

The judgment and sentence are affirmed.

KENNEDY and BECKER, JJ., concur.

---

[3]The trial court's refusal was based on the ground that "refusing to cooperate" was not a lesser included offense of attempting to elude under RCW 46.61.024. While that conclusion was erroneous, a reviewing court may affirm a trial court's ruling on an alternative theory if that theory is established by the pleadings and supported by the evidence. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 32, 864 P.2d 921 (1993); *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989).