IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,          )
                              )          No.  34745-1-III
            Respondent,       )
                              )
    v.                        )
                              )
BENJAMIN GORDON SWOFFORD JR., )          UNPUBLISHED OPINION
                              )
            Appellant.        )

KORSMO, J. — Benjamin Swofford, Jr., raises several challenges to his conviction

for attempting to elude, including an argument that the trial court wrongly denied him a

necessity defense. He was not entitled to present a necessity defense under the facts of

this case, so we affirm.

## FACTS

The incident that led Spokane authorities to file the eluding charge occurred late in

the evening of December 6, 2015. An officer spotted Mr. Swofford's minivan in High

Bridge Park, travelling 50 to 55 miles per hour on a small gravel road during inclement

weather. As the officer attempted to catch up, Mr. Swofford responded by driving

around a van stopped at a stop sign at the corner of A Street and Riverside Avenue and

into the intersection without stopping. He then accelerated away at a high rate of speed.

The officer activated his emergency lights and began pursuing Swofford. When he caught up to Swofford's vehicle, the officer turned on his siren. The siren remained on for the remainder of the pursuit, except for moments when it was deactivated to allow the officer to speak with dispatch. When the officer got close to the vehicle to attempt to ascertain its license plate, Mr. Swofford would hit the brakes and then accelerate away while the officer was slowing.

The pursuit continued onto Government Way. Mr. Swofford drove on both sides of the street. He turned on to Fort George Wright Drive, driving past Spokane Falls Community College. He continued his tactic of hitting the brakes and then accelerating. He also used both sides of the four lane road, forcing traffic to pull over and stop as he swerved back and forth.

Police ahead of the pursuit placed spike strips on the T.J. Meenach Bridge and made one southbound motorist pull over to avoid the spike stripes. Swofford hit the spike strip without slowing down and continued to drive northbound up a hill despite punctured tires. An officer estimated his speed at 60 miles per hour in the 30 mile per hour zone. The minivan started slowing due to three punctured tires and the pursuing officer caught up. The officer struck the minivan with his car, forcing it to stop.

The police took Mr. Swofford, the sole occupant of the minivan, into custody. He made several comments during this period, including requesting the police call his

2

mother to tell her that he had "f---ed up" and to notify his girlfriend that he "f---ed her car up."

The prosecution filed one count of attempting to elude and an accompanying endangerment enhancement. The case proceeded to jury trial. The defense indicated an intent to pursue a common law necessity defense. To that end, the defense made an offer of proof that Mr. Swofford was hurrying back home because he had received word that his stepdaughter had overdosed on drugs and no emergency aid had yet arrived. Since he had the only available vehicle, he was hurrying to her aid and was unaware of the police officer chasing him.

The trial court declined to allow the defense or supporting testimony, determining that necessity was not an available defense and that the testimony was not relevant to any issue before the jury. The defense thereafter did not submit any jury instructions, but did adopt as its own the prosecutor's proposed instruction concerning the defendant's decision not to testify. The defense argued the case to the jury on a theory that it was a dark and foggy night and there was no indication that Mr. Swofford knew the police were pursuing him.

The jury, however, found Mr. Swofford guilty and also returned a special verdict indicating that others had been endangered by the driving. The court imposed a top end enhanced sentence for the crime. The court also noted that no community custody could be imposed. It added a null mark, Ø, to the line indicating that 12 months of community

3

custody was being imposed. Mr. Swofford then timely appealed to this court. A panel

considered the matter without hearing argument.

## ANALYSIS

Mr. Swofford challenges the trial court's denial of his necessity defense, presents a

claim that his counsel rendered ineffective assistance by failing to offer an instruction on

willfulness, and contends that the evidence did not support the verdict or the special

enhancement. He also argues, and the State agrees, that the court imposed a term of

community custody by adding the Ø mark. We address those contentions in the order

noted.

### Necessity Defense

Mr. Swofford contends that his proposed testimony was admissible for several

reasons and justified instructing the jury on necessity. We agree with the trial court's

conclusion that the testimony was not admissible.

Trial court judges have great discretion with respect to the admission of evidence

and will be overturned only for manifest abuse of that discretion. *State v. Luvene*, 127

Wn.2d 690, 706-707, 903 P.2d 960 (1995). Discretion is abused where it is exercised on

untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12,

26, 482 P.2d 775 (1971). Evidence is relevant if it makes "the existence of any fact that

is of consequence to the determination of the action more probable or less probable." ER

401. Relevant evidence is generally admissible at trial, but can be excluded where its

4

value is outweighed by other considerations such as misleading the jury or wasting time.
ER 402; ER 403.

The crime of attempting to elude a pursing police officer is committed when a driver "willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner[1] while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop." RCW 46.61.024(1). The statute also provides an affirmative defense:

> It is an affirmative defense to this section which must be established by a preponderance of the evidence that: (a) A reasonable person would not believe that the signal to stop was given by a police officer; and (b) driving after the signal to stop was reasonable under the circumstances.

RCW 46.61.024(2).

The defense of necessity is recognized by Washington common law. That defense excuses criminal conduct when pressure brought on "by forces of nature" leads to a criminal act that avoids a greater harm. *State v. Gallegos*, 73 Wn. App. 644, 651, 871 P.2d 621 (1994); *State v. Turner*, 42 Wn. App. 242, 247, 711 P.2d 353 (1985); *State v. Diana*, 24 Wn. App. 908, 604 P.2d 1312 (1979). Citing to the Model Penal Code, this court concluded in *Diana* that the defense would be available when the defendant

---

[1] "Reckless manner" is a term of art within the traffic code. *See* RCW 46.61.520 (vehicular homicide); RCW 46.61.522 (vehicular assault). It means to operate a vehicle in a "rash or heedless manner, indifferent to the consequences." *State v. Roggenkamp*, 153 Wn.2d 614, 631, 106 P.3d 196 (2005).

5

established that due to outside circumstances not of her own causing she committed an illegal act in order to avoid a greater harm. 24 Wn. App. at 913-914. The common law defense is unavailable when the legislature has provided a statutory defense. *Id.*

The elements of the defense are memorialized in WPIC 18.02. It provides:

(1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm; and
(2) harm sought to be avoided was greater than the harm resulting from a violation of the law; and
(3) the threatened harm was not brought about by the defendant; and
(4) no reasonable legal alternative existed.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02, at 292 (4th ed. 2016).

Against this backdrop, we turn to Mr. Swofford's two specific arguments. He first claims that evidence of his "state of mind" was relevant to rebut the willfullness element of the eluding statute. The problem with this argument, however, is that he expressly eschewed a diminished capacity defense at trial. He also had no expert to testify that he suffered from a mental disease or defect that affected his behavior to act willfully.[2] *State v. Stumpf*, 64 Wn. App. 522, 524-526, 827 P.2d 294 (1992). "State of mind" testimony was not relevant absent sufficient evidence that he lacked the ability to form the requisite mental state. *Id.* Here, there was no testimony that would permit the evidence.

---

[2] This approach also was inconsistent with the theory that he was acting out of necessity—i.e., his behavior was willful, but justified.

6

Mr. Swofford also argues that the testimony about his stepdaughter's condition was relevant to establish the statutory defense. However, it was not. The statutory defense required proof that the driver did not believe that the signal to stop was being given by a police officer and that he drove in a reasonable manner thereafter. While Mr. Swofford was permitted to testify about those elements, he did not attempt to do so. His stepdaughter's drug overdose had no bearing on whether he did not believe the signal to stop came from someone who was not a peace officer, so it was irrelevant to that discussion.

Finally, although he does not reprise his trial court argument that the common law necessity defense was available to him, we will note that it was not. Even if that defense survived the creation of the statutory defense, a question we are not asked to answer in this appeal, it simply did not apply to the facts of this case. We have previously concluded that the necessity defense did not apply when a defendant claimed he was eluding police to race to the aid of a friend. *See Gallegos*, 73 Wn. App. at 650-651 (friend's need of aid was not "forces of nature" that would support necessity defense). It also is not reasonable to flee from someone who could provide the very aid that Mr. Swofford claimed he needed to provide. A reasonable person in his shoes would have immediately stopped his car and told the officer about the circumstance, rather than continue dangerous behavior threatening others on the road. Given the existence of this

7

legal alternative, the continued flight precluded a necessity defense. WPIC 18.02(4)

(defense only available if "no reasonable legal alternative existed").

For all of these reasons, the "state of mind" evidence was irrelevant. It did not

support a diminished capacity defense, nor did it support any defense to the eluding

charge.

*Ineffective Assistance of Counsel*

Mr. Swofford also argues that his attorney rendered ineffective assistance by

failing to propose an instruction on "willfully." He has not established that his counsel

erred, let along that he was harmed by this omission.

The failure to request a jury instruction typically precludes review of the court's

failure to give the instruction. *State v. Scott*, 110 Wn.2d 682, 689-691, 757 P.2d 492

(1988). Thus, Mr. Swofford recasts this issue as a failure of his attorney to provide

effective assistance under the Sixth Amendment's guaranty of counsel. Counsel's failure

to live up to the standards of the profession will require a new trial when the client has

been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899

P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential

to counsel's decisions. A strategic or tactical decision is not a basis for finding error.

*Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984). Under *Strickland*, courts apply a two-prong test: whether or not (1) counsel's

performance failed to meet a standard of reasonableness and (2) actual prejudice resulted

8

from counsel's failures. *Id.* at 690-692. When a claim can be resolved on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Long-standing principles govern our review of jury instruction questions. Trial courts have an obligation to provide instructions that correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The instructions must set forth the elements of the crimes that are before the jury. *State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984). There is no need to define those elements that are commonly understood. *Id.* However, when the elements have technical definitions, the definitional instruction must be given when requested. *Id.* at 358, 361-362. The failure to request an instruction, or to challenge the trial court's failure to give a requested instruction, waives the issue on appeal. *Scott*, 110 Wn.2d at 686; RAP 2.5(a).[3]

Critical to this case is *State v. Flora*, 160 Wn. App. 549, 249 P.3d 188 (2011). There Division One of this court ruled that, upon request, a trial court must define the term "willfully" in an attempt to elude prosecution. *Id.* at 553. However, as previously noted, any direct challenge by Mr. Swofford to the trial court's failure to define

---

[3] Certain limited instructional errors, largely involving the elements or burden of proof instructions, do present issues of manifest constitutional error that can be reviewed on appeal. *State v. O'Hara*, 167 Wn.2d 91, 100-101, 217 P.3d 756 (2009).

"willfully" would fail under *Scott* because there was no challenge to the absence of the instruction. Technical term definitions are not so fundamental that a court must give them in the absence of a request. *Allen*, 101 Wn.2d at 358. Having not challenged the absence of the willfulness instruction in the trial court, Mr. Swofford cannot do so here. *Scott*, 110 Wn.2d at 686. Thus, he must show both that his counsel erred in not seeking the instruction and that his defense was harmed by its absence.

Since it is not a required instruction, we do not believe that counsel erred by failing to propose an instruction on willfullness. It also does not appear to have been necessary given the defense of factual ignorance about the pursuing officer. In addition, it may well have worked to the detriment of the defense to have used the instruction. Defense attorneys often will decide not to propose definitional jury instructions because they assume the common understanding of a term will be in their client's favor. *State v. Pottorff*, 138 Wn. App. 343, 349-350, 156 P.3d 955 (2007). "Attempting to elude" does not require that the prosecution prove intent to elude, but there can be no attempt to elude unless the driver knows that he is being signaled to stop. *Flora*, 160 Wn. App. at 555.

The term "willfully" has more than one possible definition. At common law, it was often used to denote a standard higher than knowledge. *In re Estate of Kissinger*, 142 Wn. App. 76, 80-81, 173 P.3d 956 (2007). The eluding statute, on the other hand, equates willfulness with knowledge. *Flora*, 160 Wn. App. at 553. The thesis of Mr. Swofford's closing argument was that "we don't know if Mr. Swofford saw the signal to

10

stop. We don't know if he willfully failed to do that." This phrasing indicates that defense counsel was implying "willfully failed" meant intent to elude, not merely knowledge of a signaling police officer. Accordingly, this court cannot necessarily conclude the attorney's decision was not a legitimate trial tactic and therefore the failure to request the instruction was not deficient performance.

Mr. Swofford also cannot show that his defense was harmed by the absence of the instruction. He argued that he did not know that the officer was behind him. How an instruction equating knowledge with willfulness would have been helpful in that context is unclear. He was better off if the jury believed willfulness equated with intent or some other mental state than mere knowledge. The instruction would not have been helpful.

Mr. Swofford has failed to establish either that his counsel erred or that he was harmed by the alleged error. Since he needed to do both, his claim of ineffective assistance is without merit.

*Sufficiency of the Evidence*

Mr. Swofford also argues that the evidence did not support either the eluding charge or the endangerment enhancement. Properly viewed, the evidence supported both.

The standards governing review of this issue are well understood. The reviewing court does not weigh evidence or sift through competing testimony. Instead, the question presented is whether there is sufficient evidence to support the determination that each element of the crime was proved beyond a reasonable doubt. *Jackson v. Virginia*, 443

11

U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004).

With respect to the eluding charge, Mr. Swofford argues that the evidence did not support the determination that he willfully failed to stop, pointing to the lack of any direct evidence that he saw or heard the officer behind him. The circumstantial evidence of his driving behavior allowed the jury to infer that he knew that the officer was behind him and willfully drove to elude the pursuer.

An officer who viewed the defendant's vehicle noted that while there was equipment in the back, the driver's view to the rear was not obstructed. In the course of the chase, Mr. Swofford used the oncoming traffic lanes and swerved back and forth between his lane and that one for no apparent reason other than to prevent the officer from seeing his license plate. When the officer did get close, Swofford's vehicle would brake, forcing the pursuer to slow down and allowing Swofford to speed away. He then drove through the spike strip at high speed and continued up the hill with deflated and deflating tires at 60 miles per hour, nearly double the posted speed limit. When he was

12

apprehended, his first words were that he had "f---ed up." It is difficult to believe that he would admit fault for doing something he did not know he was doing.

While certainly other explanations for his behavior were possible, the test for sufficiency of evidence does not require exclusion of competing possibilities. The purposeful, evasive driving allowed the jury to infer that he was willfully refusing to stop for the officer behind him. Ergo, it was sufficient to support the jury's verdict.

The enhancement charged in Mr. Swofford's case required proof that, as a result of his driving, "one or more persons, other than the defendant or the pursuing law enforcement officer, were threatened with physical injury or harm." Clerk's Papers at 6. On appeal, Mr. Swofford argues that the evidence did not establish that anyone was threatened with physical injury or harm by his driving.

While this is a closer question than the previous argument, the evidence still allowed the jury to make the determination that it did. Mr. Swofford passed his first vehicle illegally at a stop sign that he did not obey, thereby endangering the driver he passed who could not have been expecting that action and probably was awaiting traffic to clear before going on past the stop sign. The driving during the pursuit ranged at speeds estimated at 50 to 60 miles per hour in areas zoned for 30 and 35 miles per hour, including through an area near the community college that has many apartment complexes. Mr. Swofford's use of both sides of the roadway, coupled with the very high speeds for a residential area, led to at least three cars pulling to the side of the road. In

13

addition, the police officer waiting near the spike strips on the bridge and another car pulled over at the location were potentially endangered if Mr. Swofford had lost control when driving through that barrier at high speed. He then drove off at 60 miles per hour on failing tires and through a traffic light before the pursuing officer forced him off the road. All of this occurred in foggy weather.

At least four drivers had to stop to ensure their own safety due to Mr. Swofford's driving, and a fifth one was illegally passed at a stop sign. This was not a pursuit on an empty stretch of rural freeway during a clear afternoon. While it was late and traffic was much lighter than during daylight hours, there were other drivers out who had to respond to Mr. Swofford and his unsafe driving. The jury was permitted to conclude that they were endangered by his behavior, even if they were not actually harmed by it.

The evidence supported the jury's verdict on the eluding charge and on the endangerment enhancement.

*Community Custody*

Lastly, Mr. Swofford and the prosecutor both argue that the trial court erroneously imposed community custody for 12 months by placing the null sign on the community custody line of the judgment and sentence. On its face, the null marker means zero, nothing, nada, zilch, nihil, or any other synonym for none. In light of that mark, as well as the court's express acknowledgement that it was not imposing community custody

14

because it could not do so, we have no hesitancy in saying that community custody was not imposed.

However, in light of the position of the parties who seem to believe that 12 months of community custody was imposed, we remand to the superior court for entry of an order clarifying that no community custody was imposed.

Affirmed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Siddoway, J.