IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38299-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TERESITA MOJICA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Teresita Mojica appeals her conviction for residential burglary, arguing that the jury wrongly rejected her proof of the common law defense of necessity. Because rational jurors could have found that she failed to prove the defense, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Teresita Mojica was driving on the Saturday of President's Day weekend 2021 when her car ran out of gas just as she was about to cross the Oregon border and enter Klickitat County, Washington. Ms. Mojica was a student at Wenatchee Valley College and was unfamiliar with the area where she ran out of gas.

Before running out of gas, she had noticed and admired the Maryhill Museum, which she could see across the Columbia River, on the Washington side. She wanted to clear her head (she later described herself as "running away from some problems") so,

leaving her car, she crossed a nearby bridge and walked to the museum.  Report of

Proceedings (RP) at 144.  She claims that on reaching it and walking on its grounds, she

slipped in the snow and hurt her back.  She was not carrying a phone and claims to have

called out for help, but the museum was closed for the winter and no one responded.

Witnesses at Ms. Mojica's trial agreed that there was inclement weather that

Saturday; according to Ms. Mojica, it was "super windy" and "freezing."  RP at 145.

Evidence was later presented that there was six to eight inches of snow on the museum

grounds.  Ms. Mojica claims she lay for hours in the snow before deciding to approach a

doublewide manufactured home located west of the museum, which is where the

museum's caretaker, Mike Clough, resided.  Mr. Clough was not present, having traveled

to Hood River for the weekend.

No one responded when Ms. Mojica called out to anyone in the home, so she

broke a window in the entry door and let herself inside.  There, she got out of her wet

clothing, took a shower to warm up, donned a wetsuit that she found, and helped herself

to food.

She rummaged through drawers in the home, later explaining that it was only to

look for a phone.  She found a set of keys that she discovered opened an adjacent shop

that contained machinery, including what Mr. Clough described as the museum's work

truck.  Although Ms. Mojica acknowledges that by the time she located the truck she was

warm, fed, and feeling safe, she decided to take the truck to go back to Oregon and

recover her car. En route, however, she drove the truck into a ditch a short distance from where she had left her car parked. After walking to check on her car, she returned to the truck, which was being attended to by a state trooper.

Ms. Mojica told the trooper an only partially-true story about having "borrowed" the truck to get gas for her nearby car. RP at 169. The truck was sufficiently snowbound that it would need to be recovered by a tow truck, but the patrolman, having noticed a gas can in the truck, offered to drive Ms. Mojica to her car where she could refuel it with the borrowed gas. Ms. Mojica accepted the offer, fueled her car, and returned to Mr. Clough's residence, where she parked her car in the shop and moved some of her belongings inside his home.

On Mr. Clough's return on Monday, he was surprised to see vehicle tracks that had crossed the museum's "grand lawn" and an unknown vehicle parked in the shop where the work truck should have been. RP at 100. He discovered Ms. Mojica in the home, directed her to come outside, called law enforcement, and directed Sheriff's Detective Timothy Neher to Ms. Mojica when he arrived. On entering the home and checking the grounds, Mr. Clough found that Ms. Mojica had gone through some of his belongings; eaten his food; left broken glass on the interior floor and dishes in his sink; moved her sleeping bag, guitar and amplifier into his home; and had started a fire in an outside lanai, burning documents and papers from the home. He also found a partially coherent note that stated, in part, "I'm very sorry to have broken in. I was freezing

3

outside, thought I almost lost my toes.  I want to work today for i[t] I'm an artist. . . .  I

[am] not a thief, please forgive me."  RP at 134-35.

Ms. Mojica was read her *Miranda*[1] rights by Detective Neher and admitted to

breaking into Mr. Clough's residence, taking the truck, getting it stuck, and then parking

her own car at the home.  She was charged with residential burglary and taking a motor

vehicle without permission in the second degree.

At trial, the State agreed that Ms. Mojica was entitled to assert the common law

defense of necessity.  The jury instruction dealing with the defense to residential burglary

read in pertinent part:

> Necessity is a defense to a charge of Residential Burglary if
>
>> (1) The defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm;
>>
>> (2) Harm sought to be avoided was greater than the harm resulting from the violation of the law;
>>
>> (3) The threatened harm was not brought about by the defendant; and
>>
>> (4) No reasonable legal alternative existed.
>
> The defendant has the burden of proving this defense by a preponderance of the evidence. . . .  If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to this charge.

Clerk's Papers at 53.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

The jury found Ms. Mojica guilty of both counts. She appeals, challenging only the residential burglary conviction.

ANALYSIS

Ms. Mojica appeals her conviction for residential burglary, arguing that she proved the defense of necessity.

The necessity defense is available "when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law." *State v. Diana*, 24 Wn. App. 908, 913, 604 P.2d 1312 (1979). To successfully raise the defense of necessity, a defendant must show by a preponderance of the evidence the four elements that were identified for Ms. Mojica's jury in the instruction set forth above. *See, e.g.*, *State v. Ward*, 8 Wn. App. 2d 365, 372, 438 P.3d 588 (2019).

When a defendant contends she is entitled to a reversal of her conviction on the basis that she established an affirmative defense as a matter of law, the appropriate standard for our review is whether, considering the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove the defense by a preponderance of the evidence. *State v. Matthews*, 132 Wn. App. 936, 941, 135 P.3d 495 (2006) (citing *State v. Lively*, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996)).

In the State's closing argument, the prosecutor suggested that jurors could reject Ms. Mojica's necessity defense on the basis that she brought about the threatened harm

5

by leaving the relative safety and protection of her car to walk to the museum. The prosecutor argued they could reject the defense on the basis that Ms. Mojica could not reasonably believe that the burglary was necessary as well as the basis that she had a reasonable legal alternative, since she could have sought help by flagging down a driver on State Highway 14. Ms. Mojica had entered the museum grounds from Highway 14, and Mr. Clough testified that the highway was "[w]ay less than a quarter mile" from the home and shop. RP at 114. The prosecutor argued that particularly after the first night, the harm that Ms. Mojica sought to avoid was not greater than her ongoing invasion of the sanctity of Mr. Clough's home. A trier of fact, considering the evidence in the light most favorable to the State, could rationally have accepted all or any one of these arguments.

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.

6