FILED
COURT OF APPEALS
DIVISION II

2013 JUL 30  AM 10: 30

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42807-5-II |
| Respondent, | |
| v. | |
| TEDDY JAY PYLE, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Teddy Pyle appeals his convictions for attempting to elude a pursuing police vehicle, obstructing a law enforcement officer, and harassment. He argues that the trial court had no authority to impose probationary conditions as part of his misdemeanor sentences because he was sentenced to the maximum amount of jail time on each count. We agree. Pyle also argues several grounds for reversal in his statement of additional grounds (SAG). None of those issues require reversal. We remand for resentencing.

## FACTS

At 10:30 P.M. on September 3, 2011, Officer Brian Ruder saw a van run a stop sign at a "high rate of speed" and then swerve off and back onto the road. 1 Report of Proceedings (RP) at 83. The van then signaled left but abruptly turned right. At that point, Officer Ruder turned on his emergency lights and followed the van. The van did not immediately pull over; instead, it sped up and began swerving into the other lane, alternately breaking and accelerating. After about three and a half blocks, the van suddenly turned into a gravel driveway at a "very high rate of speed," stopping just before it collided with a fence. 1 RP at 98.

Pyle stepped out of the van's driver's side and began moving away from Ruder. Ruder drew his firearm and ordered Pyle to stop and show his hands. Pyle eventually turned and

walked toward Ruder, screaming and acting "extremely aggressive." 1 RP at 109. Ruder ordered him to stop, show his hands, and get down on his knees. Pyle did not comply and continued to advance toward Ruder, so Ruder used his baton to strike Pyle in the leg. Ruder was then able to cuff Pyle. Pyle continued to scream at Ruder and resisted entering the patrol car. Ruder was eventually able to overpower Pyle and get him into the patrol car. The State charged Pyle with attempting to elude a pursuing police vehicle, obstructing a law enforcement officer, harassment, and driving while license suspended.

The State dismissed the driving while license suspended count before the trial. The jury convicted Pyle on all remaining counts. The trial court sentenced him to 60 days of confinement on the attempting to elude count and 364 days on both the obstructing and harassment counts, with the sentences to run concurrently. The trial court also imposed 24 months of probation without suspending any of Pyle's jail time. Pyle appeals.

ANALYSIS

I.    PROBATIONARY CONDITIONS

Pyle first argues that the trial court had no authority to impose probationary conditions on his misdemeanor sentences. The State concedes that the trial court erred. Because the trial court imposed the maximum amount of jail time, it was not authorized to also order probationary conditions. We remand for resentencing.

A court's sentencing authority is limited to that granted by statute. *State v. Skillman*, 60 Wn. App. 837, 838, 809 P.2d 756 (1991). Whether a sentencing court has exceeded its statutory authority is a question of law we review de novo. *State v. Murray*, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003).

RCW 9.95.210(1)(a) provides that "the superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate . . . ." Thus, probation exists only as a condition of suspension of part or all of a sentence. Where no jail time is suspended, probation may not be imposed. *State v. Gailus*, 136 Wn. App. 191, 201, 147 P.3d 1300 (2006) *overruled on other grounds by State v. Sutherby*, 165 Wn.2d 870, 204 P.3d 916 (2009).

Both obstructing a law enforcement officer and harassment are gross misdemeanors. RCW 9A.76.020(3); RCW 9A.46.020(2)(a). The maximum term for these gross misdemeanors is 364 days. RCW 9.92.020. The trial court imposed 364 days of confinement for each of these convictions. The trial court then imposed 24 months of probationary conditions without suspending any of Pyle's jail time. Because the trial court imposed the maximum sentences, it lacked authority to also impose probationary conditions. We therefore reverse the trial court's imposition of probation and remand for resentencing.

II.    SAG

A.    Ineffective Assistance of Counsel

Pyle next argues that his counsel was ineffective for failing to object, failing to prepare, and failing to propose jury instructions. His arguments are not persuasive.

Under the *Strickland*[1] test, Pyle must show that counsel's performance was deficient and that this deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Performance is deficient only if it "[falls] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Performance is not deficient if counsel's conduct can be characterized as a legitimate trial strategy. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

3

177 (2009). To establish prejudice, the defendant must show a reasonable probability that the deficient performance affected the outcome of the trial. *Thomas*, 109 Wn.2d at 226.

### 1. Failure to Object

Pyle contends that counsel was ineffective for failing to object to the admission of photographs of the scene and to Ruder's testimony regarding legal conclusions. His argument fails because he cannot show that an objection to the photographs would have been sustained or that counsel's failure to object to the testimony prejudiced him.

Pyle argues that his counsel should have objected to the admission of photographs of the scene. He asserts that the photographs were misleading because they were taken during the day and did not accurately represent the visibility and parking conditions as they were on the night of the incident. To prevail on an ineffective assistance claim based on counsel's failure to object, the defendant must show that an objection would likely have been sustained. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998). Pyle cannot show that an objection would likely have been sustained here. Although defense counsel did not object to the photographs, Pyle himself told the trial court that he objected to the State using the photographs because they were taken during the day. The trial court explained why the photographs were admissible, stating that pictures taken at night would be difficult to see and that Pyle's attorney could argue during closing argument that the conditions on the night of the incident were different from the conditions depicted in the State's photographs.

Pyle also argues that counsel was ineffective for failing to object to Ruder testifying about legal conclusions. Because the trial court instructed the jury to disregard Ruder's testimony about legal conclusions, Pyle cannot show that counsel's failure to object prejudiced him.

4

Ruder testified that Pyle's actions "constituted reckless driving" and that he believed Pyle was "trying to elude [him]." 1 RP at 104, 105. After hearing that testimony, the trial court excused the jury and discussed with counsel and Ruder the need to avoid testifying about legal conclusions. The trial court then instructed the jury to disregard Ruder's statement that Pyle was attempting to elude and reminded the jury that its job is to decide whether Pyle was, in fact, attempting to elude. Pyle cannot show that the outcome of the trial would have been different if defense counsel, rather than the trial court, had objected to Ruder's statements.

### 2. Failure to Prepare

Pyle next argues that counsel was ineffective for failing to prepare. Specifically, he argues that counsel should have asked Ruder whether he passed the test to become a "fully commissioned Washington police officer" as required by the mutual assistance agreement.[2] SAG at 20. Ruder, a Vancouver Police Department officer, arrested Pyle outside of Vancouver city limits, but the trial court ruled that Ruder had jurisdiction under RCW 10.93.070 and the mutual law enforcement assistance agreement between Clark County and the Vancouver Police Department. RCW 10.93.070(3) allows officers who possess basic law enforcement training or a certificate of equivalency to enforce traffic or criminal laws throughout the state under a mutual law enforcement assistance agreement. Ruder testified that he attended law enforcement academy in Wisconsin, lateral law enforcement academy in Washington, and "several hundred hours of [additional] training" in Washington. 1 RP at 80. The trial court determined that Ruder met the qualifications under the statute. Because Ruder met the qualifications, Pyle cannot show that any prejudice resulted from defense counsel failing to further question Ruder's training.

---

[2] This agreement is not in the record.

5

3.    Jury Instructions

      a.    Statutory Defense to Attempting to Elude a Pursuing Police Vehicle

Pyle contends that counsel was ineffective for not requesting an instruction on the statutory affirmative defense for attempting to elude a pursuing police vehicle. Because Pyle cannot show that the trial court would have accepted the proposed instruction, counsel's failure to propose it does not constitute ineffective assistance.

Under RCW 46.61.024(2), it is an affirmative defense to attempting to elude a pursuing police vehicle if (1) a reasonable person would not believe that the signal to stop was given by an officer and (2) it was reasonable under the circumstances for the defendant to continue driving after the signal to stop. If a defendant would not have received a proposed instruction, counsel's decision to not request it does not result in ineffective assistance. *State v. Flora*, 160 Wn. App. 549, 556, 249 P.3d 188 (2011).

Here, there are two prongs to the affirmative defense, and Pyle does not argue that the first prong—a reasonable person would not believe a signal to stop was given—was met. Further, the evidence at trial shows that a reasonable person would have believed a signal was given. Ruder testified that he had turned on his emergency lights and siren, and Pyle admitted that he noticed the lights. Because the evidence shows that the first prong was not met, and Pyle does not argue that it was, the trial court was unlikely to give this instruction if defense counsel had requested it.

###### b.    Lesser Included Offenses

Pyle next argues that counsel was ineffective for failing to request jury instructions on lesser included offenses. Because Pyle cannot show that he was entitled to lesser included offense instructions on any of his charged offenses, his argument fails.

We apply a two-prong test to determine whether a defendant is entitled to a lesser included offense instruction: first, each element of the lesser offense must be a necessary element of the charged offense; second, the evidence must support an inference that the lesser crime was committed. *State v. Sublett*, 176 Wn.2d 58, 83, 292 P.3d 715 (2012). Regarding the second prong, the test is "'whether there is evidence supporting an inference that the defendant is guilty of the lesser offense *instead of* the greater one.'" *State v. Gallegos*, 73 Wn. App. 644, 652, 871 P.2d 621 (1994) (quoting *State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515 (1992)). We view the evidence in the light most favorable to the party requesting the instruction. *Sublett*, 176 Wn.2d at 83.

Pyle first argues that his counsel should have requested a failure to obey jury instruction. Washington courts have previously recognized that failing to obey is a lesser included offense of attempting to elude a pursuing police vehicle. *Gallegos*, 73 Wn. App. at 652. Therefore, the issue is whether the evidence supports an inference that Pyle is guilty only of failing to obey rather than attempting to elude a pursuing police vehicle.

A person is guilty of failing to obey an officer if he "willfully fails to stop when requested or signaled to do so by a person reasonably identifiable as a law enforcement officer or [fails] to comply with RCW 46.61.021(3)." RCW 46.61.022. A person is guilty of attempting to elude a police officer if he "willfully fails or refuses to immediately bring his . . . vehicle to a stop and . . . drives his . . . vehicle in a reckless manner while attempting to elude a pursuing

police vehicle, after being given a visual or audible signal to bring the vehicle to a stop." RCW 46.61.024(1). A person acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of the risk is a gross deviation from conduct that a reasonable person would exercise in the same situation. RCW 9A.08.010(1)(c).

All of the evidence of the nature of Pyle's driving after he was signaled to stop was that it was reckless. Ruder testified that, after he turned on his lights, Pyle immediately sped up and began swerving into the other lane and signaling erratically. Pyle also "spiked the brakes" several times and then accelerated. 1 RP at 90. He eventually turned abruptly into a gravel driveway at a "very high rate of speed." 1 RP at 98. Ruder further stated that this was a residential area and that he had previously observed other cars and pedestrians on the road at that time of night. Ruder testified that, given the nature of the area and Pyle's driving, Pyle's actions jeopardized others' safety. Even viewing the evidence in a light most favorable to Pyle, he was driving recklessly. And because he was driving recklessly, Pyle has failed to prove that he was guilty only of the lesser included offense of failing to obey; therefore, he was not entitled to an instruction on failing to obey and counsel was not deficient for failing to request one.[3]

Next, Pyle argues that his counsel should have requested a resisting arrest instruction. Because resisting arrest is not a lesser included offense of obstructing a law enforcement officer, counsel was not ineffective for failing to request this instruction.

---

[3] Pyle also argues that there is insufficient evidence that he drove recklessly. Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). As discussed above, there is sufficient evidence to support the jury's finding that Pyle was driving recklessly.

8

A person is guilty of obstructing a law enforcement officer if he willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his official powers or duties. RCW 9A.76.020(1). A person is guilty of resisting arrest if he intentionally attempts to prevent a peace officer from lawfully arresting him. RCW 9A.76.040(1).

Resisting arrest is not a lesser included crime of obstructing a law enforcement officer because the elements of resisting arrest are not necessary elements of obstructing a law enforcement officer. Resisting arrest requires intent, while obstructing requires only willfulness. RCW 9A.76.020(1); RCW 9A.76.040(1). Resisting arrest also requires an arrest, while obstructing requires only that a person interfere with an officer's official duties, which include—but are not limited to—arrest. RCW 9A.76.020(1); RCW 9A.76.040(1).

Finally, Pyle argues that his counsel should have requested an instruction on third degree assault.[4] Third degree assault is a class C felony, and the State charged Pyle with gross misdemeanor harassment. RCW 9A.36.031(2); RCW 9A.46.020(2)(a). Even assuming that Pyle was entitled to a third degree assault instruction, it was a legitimate trial strategy for defense counsel to not request an instruction on a crime that carried a potentially greater punishment.

---

[4] Pyle alternates between requesting an instruction on third degree and fourth degree assault. However, an instruction on fourth degree assault, even if it were a lesser included offense, would not fit the facts of this situation. A person is guilty of fourth degree assault if, under circumstances not amounting to assault in the first, second, or third degree, he assaults another. RCW 9A.36.041(1). Here, if an assault did occur, it is more appropriately categorized as third degree assault because it occurred while Pyle was attempting to prevent his arrest. RCW 9A.36.031(1)(a) (a person is guilty of third degree assault if he assaults another with intent to prevent or resist the execution of any lawful process or the lawful apprehension or detention of himself).

B.     Leading Questions

Pyle also argues that the prosecutor asked leading questions and that both the prosecutor and Ruder stated "misleading conclusion[s]." SAG at 6. Neither of these arguments are persuasive. Before introducing photographs into evidence, the prosecutor asked Ruder, who took the photographs, whether they were "accurate and fair depictions of the incident scene." 1 RP at 89. The context of this question indicates that the prosecutor was attempting to authenticate the photographs and was asking Ruder whether the photographs had been altered. *See* ER 901. This question was not improper under the circumstances. The other statements that Pyle takes exception to all involve whether there were spaces for him to pull over safely. He argues that there were no places to pull over and that the prosecutor's and Ruder's references to these spots were "misleading conclusion[s]." SAG at 6. Whether or not Pyle had space to pull over is a factual question and not—as Pyle argues—a legal conclusion. It is the jury's job to resolve disputed factual issues, and we will not review the jury's credibility determinations. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006) (credibility determinations are for the trier of fact and are not subject to review).

C.     Speculative Testimony

Next, Pyle contends that the trial court erred by allowing Ruder's speculative testimony. Because Ruder's testimony was based on his rational observations of Pyle's driving, the trial court did not err by allowing it.

The prosecutor asked Ruder whether "it [was] possible that the defendant could have hit a pedestrian." 1 RP at 93. Defense counsel objected to the question as speculative, and the prosecutor offered to rephrase, instead asking Ruder if Pyle's driving jeopardized the safety of pedestrians, bicyclists, or other vehicles. Ruder said yes to each and added that this was a

10

residential area. Defense counsel again objected, and the trial court overruled the objection, stating that Ruder's answers "would indicate where [Pyle has] driven." 1 RP at 93.

A lay witness may give an opinion if it is rationally based on his perceptions and helpful to the jury.[5] ER 701. The trial court has "wide discretion" to admit such testimony. *State v. Kinard*, 39 Wn. App. 871, 874, 696 P.2d 603 (1985).

Ruder's testimony was based on his perceptions about where and how Pyle was driving. Ruder testified that this was a residential area and that he had previously seen people "out and about" in the area at the time of night when the incident occurred. 1 RP at 94. He also testified that Pyle was "swerving from side to side all over the roadway." 1 RP at 90. Ruder's assertion that Pyle could have hit other vehicles or pedestrians was based on these observations. Because his testimony was based on facts that he observed, the trial court did not err by allowing it.

D.    Vagueness

Finally, Pyle asserts that all three statutes he was charged under are void for vagueness. He argues that the attempting to elude statute, RCW 46.61.024, is vague because it does not give distance and time designations. But a statute is not vague merely because it does not contain such specific standards as Pyle advocates. *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990) (the vagueness doctrine does not require impossible standards of specificity or absolute agreement); *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988) ("a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct"). Pyle fails to give any reasons why the other two statutes are vague. Therefore, we do not review his

---

[5] Although Ruder could be classified as an expert, this particular testimony was "not based on scientific, technical, or other specialized knowledge." ER 701. Therefore, this particular testimony is better analyzed under ER 701, which involves opinion testimony by lay witnesses.

11

arguments. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) ("Parties raising constitutional issues must present considered arguments to this court.").

We remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Hunt, J.

Bjorgen, J.