# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, ) No. 74934-0-I

Respondent, )

. v. ) DIVISION ONE

) UNPUBLISHED OPINION
LINDA RENAE CLARK, )

Appellant. ) FILED: September 25, 2017
)

APPELWICK, J. — Clark appeals her convictions for second degree burglary and taking a pet animal. She claims that her attorney was ineffective for failing to present a necessity defense or communicate her acceptance of a plea offer to the State. Clark has failed to show that defense counsel's performance was deficient. We affirm.

## FACTS

Frank and Rebecca Scott owned two dogs: Ellie, a twelve year old German wire terrier, and Zalo, a ten year old German shepherd. The dogs typically slept in the Scotts' house but spent most of their day either in the Scotts' garage or the fenced yard. The dogs wore collars and the Scotts stored their leads in the garage.

In approximately February 2014, the Scotts hired Linda Clark, who owned a dog-walking business, to walk the dogs. Clark was instructed to enter the garage, put the leads on the dogs' collars, and walk them once a day.

However, within a month or two, Clark began walking the dogs several times a day of her own accord, sometimes late at night or in heavy rain. Clark also

frequently let herself into the garage at all hours to check on the dogs and leave notes regarding what she believed was proper care for them. In addition, Clark replaced the dogs' collars with collars that had her own name and phone number instead of the Scotts'.

In May or June 2014, concerned by Clark's behavior, Frank told Clark that her services were no longer necessary. Clark responded, "[I]f you take me away from these dogs, you're going to regret it." The Scotts contacted the Skagit County Sheriff's Office. Deputy Brad Holmes came to the Scotts' house and observed that both dogs appeared to be in good health for their age and their living conditions were appropriate. Deputy Holmes went to Clark's house and told her "that she cannot go back to the residence for any reason or she could be arrested for trespassing." Clark agreed that she would not go back to the Scotts' property. The Scotts built a heavier fence to keep Clark from coming onto the property.

However, on the morning of November 6, 2014, the Scotts noticed that Ellie and Zalo were missing. The Scotts' fence had been cut and pieces of the fence were found in the Scotts' garbage can. The dogs' leads were also missing. The Scotts were particularly concerned because Zalo was required to take medication and had not had his medication yet that morning.

Sergeant Jennifer Sheahan-Lee located Clark walking around town and asked if she had seen the dogs. Clark stated that she had last seen the dogs the previous evening. She admitted that she had gone to the Scotts' property and petted the dogs through the fence. A few hours later, Sergeant Sheahan-Lee saw Clark walking a different dog, and approached her to tell her that Ellie and Zalo

were missing. Clark denied having the dogs or knowing where they were. After receiving a report that a local citizen had seen Clark with Ellie and Zalo that morning, Sergeant Sheahan-Lee went to Clark's house. When Sergeant Sheahan-Lee told Clark that Zalo had not had his medication that day, Clark then admitted she had the dogs and turned them over Sergeant Sheahan-Lee. Sergeant Sheahan-Lee also noted that both dogs did not appear to be neglected or in need of any care.

The State charged Clark with second degree burglary and taking a pet animal.[1] Prior to trial, Clark notified the State of the possibility that she would raise a necessity defense, on the grounds that she took the dogs because she believed the Scotts were not taking good care of them. The trial court ruled that Clark could request a necessity instruction if the evidence supported it.

Clark did not testify. Regarding a necessity instruction, defense counsel conceded it "would be a frivolous motion, frankly, at this point." Instead, defense counsel argued that there was no evidence to show that Clark had entered the Scotts' home and that the evidence showed it was more likely that the dogs escaped and Clark rescued them. A jury convicted Clark as charged.

Immediately after trial, Clark filed a pro se motion for a new trial, claiming that she received ineffective assistance of counsel. In support of her motion, Clark provided a 28 page document containing the names of potential witnesses that she claimed would support a necessity defense, as well as a summary of their potential testimony. Clark also provided several pages of e-mails exchanged

---

[1] The State also charged Clark with criminal trespass, which it dismissed prior to trial.

between her and defense counsel regarding the necessity defense and a plea offer from the State. The trial court appointed substitute counsel for the purpose of briefing these claims. Substitute counsel raised three issues in the motion for a new trial: (1) that defense counsel was ineffective for failing to raise a necessity defense; (2) that defense counsel was ineffective for failing to "effectively communicate" with Clark; and (3) that the trial court erred in prohibiting defense counsel to use photographs during closing argument.

At a hearing on the motion, Clark testified that she provided the list of witnesses to defense counsel, but admitted she did not know if defense counsel had contacted them. Substitute counsel provided an affidavit stating that she reviewed defense counsel's case file and "[t]here was no indication in the file that any of the witnesses that Ms. Clark provided to counsel were interviewed or contacted in any way by defense counsel." Defense counsel did not testify.

The trial court denied the motion. The trial court noted:

> There's been much focus placed on the witness list that was presented to [defense counsel] by Ms. Clark. Sure, you would have liked to see all of those probably talked to by [defense counsel] or his staff, but it seems like the whole focus on that was they would only provide character evidence, and generally that's not admissible in any event. And if it was going to go to the necessity defense, I didn't hear that, and the necessity defense wasn't going to be a viable one in any event, particularly since the decision not to testify, I think that -- by the defendant -- certainly precluded any -- any introduction of any sort of evidence relative to a necessity defense.

Clark appeals her conviction.

DISCUSSION

Clark contends that defense counsel provided ineffective assistance in two ways: (1) by failing to present a necessity defense and (2) by failing to communicate her acceptance of a plea offer to the State.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show ineffective assistance of counsel, a defendant must demonstrate both that counsel's conduct was deficient and that the deficient performance resulted in prejudice. State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). To show that counsel's performance was deficient, the defendant must establish that it fell below an objective standard of reasonableness given the circumstances. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If counsel's conduct can be characterized as a legitimate trial strategy or tactic, performance is not deficient. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To show that the deficient performance was prejudicial, the defendant must show that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. McFarland, 127 Wn.2d at 334-35. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Strickland, 466 U.S. at 700. We engage in a strong presumption that counsel's representation was effective. McFarland, 127 Wn.2d at 335.

A trial court may grant a motion for a new trial if "substantial justice has not been done," which can include ineffective assistance of counsel. CrR 7.5(8); State

v. Dawkins, 71 Wn. App. 902, 906-07, 863 P.2d 124 (1993). A trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion. State v. Balisok, 123 Wn.2d 114, 117, 866 P.2d 631 (1994). A trial court abuses its discretion when a decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

We first address Clark's claim that defense counsel should have raised a necessity defense. The Sixth Amendment right to counsel includes the right to control one's defense, which encompasses the decision to present an affirmative defense. State v. Coristine, 177 Wn.2d 370, 376, 300 P.3d 400 (2013). An attorney's failure to recognize and raise an affirmative defense can fall below the constitutional minimum for effective representation, but determining whether an attorney was ineffective requires review of whether the record confirms a valid strategic decision. Id. at 379.

"Necessity" is a common law defense with limited application. State v. Diana, 24 Wn. App. 908, 913-16, 604 P.2d 1312 (1979). "The necessity defense is available to a defendant 'when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law.'" State v. Gallegos, 73 Wn. App. 644, 650, 871 P.2d 621 (1994) (quoting Diana, 24 Wn. App. at 913). In order to sustain a necessity defense, the defendant must show by a preponderance of the evidence that "(1) he or she reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the

harm sought to be avoided was greater than the harm resulting from a violation of the law, and (3) no legal alternative existed." Gallegos, 73 Wn. App. at 651.

It is clear, based on the evidence presented at trial, that Clark was not entitled to a necessity instruction. No witness testified that that the dogs were suffering any harm. In fact, both Deputy Holmes and Sergeant Sheahan-Lee testified that the dogs appeared to be in good health for their age and their living conditions were suitable. And, there was no evidence that Clark had made a good faith effort to first pursue legal alternatives, such as notifying animal control or local animal welfare organizations.

Clark contends that defense counsel was ineffective for failing to present evidence to support a necessity defense, including her own testimony and the testimony of the witnesses she provided him. We disagree.

First, the record shows that defense counsel did, in fact, investigate the possibility of a necessity defense. Approximately two months prior to trial, defense counsel sent Clark a lengthy e-mail explaining why he did not believe a necessity defense was a good strategy. Defense counsel stated:

> In my expert legal opinion, as a matter of law, the defense of necessity is not available under the facts of your case. Further, even if the defense were available, there is not sufficient evidence to raise it despite your anticipated testimony about the objective events preceding your taking the dogs. Your personal belief that the dogs needed to be rescued will not be sufficient considering the evidence the State has that the situation had been investigated by law enforcement.

It is clear that defense counsel weighed Clark's credibility against the credibility of the investigating officers and determined that a necessity defense would not be successful. And, none of Clark's proposed witnesses appear to have had any first-

-7-

hand knowledge of the dogs' living conditions. The fact that Clark was ultimately convicted does not render defense counsel's strategy unreasonable; "hindsight has no place in an ineffective assistance analysis." Grier, 171 Wn.2d at 43.

Defense counsel's strategy of general denial was reasonable for other reasons. The record shows that Clark had freely admitted on several occasions that she took the dogs from the Scotts' property. For example, when the Scotts sought a civil order of protection regarding Clark, Clark filed a response stating "The Scotts continually failed to provide Zalo and Ellie with proper identification up and until the day I took them from their home on November 6" (Emphasis added.) But, the deputy prosecutor mistakenly failed to offer this evidence. In light of the lack of evidence supporting a necessity defense, it was a reasonable strategic choice for defense counsel to take advantage of the State's error and argue that the State had not presented evidence that Clark took the dogs.[2]

We next address Clark's claim that defense counsel failed to communicate her acceptance of the State's plea offer. The State argues that Clark did not raise this issue in her motion for a new trial, and thus RAP 2.5(a) bars her argument as unpreserved. But, "[a] claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Nevertheless, the record provided by Clark does not support her claim.

---

[2] In reply, Clark argues that, even if it were not a winning strategy, defense counsel should have pursued a necessity defense because "a defense of necessity could have provided the basis for positive sentencing consequences." This court will not consider an issue raised for the first time in a reply brief. In re Pers. Restraint of Peterson, 99 Wn. App. 673, 681, 995 P.2d 83 (2000).

On March 11, 2015, defense counsel sent Clark an e-mail containing a plea offer from the State. The offer involved Clark pleading guilty to taking a pet and criminal trespass and dismissing the burglary. The plea offer also included community service, a no-contact order protecting the Scotts, a mental health evaluation, and 24 months of supervised probation. Clark wrote back the same day, stating:

> At first glance, I must decline the prosecutor's offer, see no reason for a counter offer because, in my opinion, she is being completely unreasonable, and proceed to trial. I have no problem with it being continued to August.
>
> If you have any inclination to advise me to accept, I would appreciate your input and counsel.

On August 19, 2015, defense counsel sent Clark an e-mail in which he outlined the strengths and weaknesses of her case. Defense counsel strongly advised Clark to accept the State's plea offer:

> After conducting a thorough investigation and having complete researching the caselaw relevant to your case, in my expert legal opinion, you should take the State's plea bargain offer and minimize your exposure.
>
> . . . .
>
> Again, I suggest you seriously consider taking the State's plea bargain offer. Proceeding to trial on the facts of this case would be against my direct advice.
>
> Although, I believe your trial would be an interesting one and I do look forward to representing you if you choose to proceed that way.

On September 16, 2015, Clark e-mailed defense counsel requesting that he propose "a reasonable counter-offer" to the State's plea offer. Clark refused to

agree to the no-contact order, mental health evaluation, or probation.

Approximately an hour later, Clark wrote a second e-mail stating:

> Actually, the fact that you now know Frank Scott Is an a**hole Is good enough for me. <u>If you feel, based on what you now know, that the prosecutor's offer is fair then I will take it as offered</u>. If, however, based on what you now know, you do not believe it fair then I propose what I sent below.

(Emphasis added.)

On October 5, 2015, defense counsel informed Clark that the deputy prosecutor "is holding firm on her offer" and that the offer would expire two days later. On October 6, 2015, Clark sent defense counsel an e-mail stating:

> Also, I want to remind you I am NOT afraid to go to trial on this if they remain unreasonable. . . . [M]aybe we need to leave it up to a jury for my punishment.

And the following day, on October 7, 2015, Clark wrote:

> . . . I truly do not want to make your job more difficult, but after giving it a great amount of thought I cannot agree to an extension of the current restraining order. I have lived in fear of being arrested on a daily basis and am unwilling to continue living in this constant torment. I would rather go to jail for three months. It would be less stressful and traumatic.
>
> . . . .
>
> I am afraid this must also extend to the mental health evaluation and the probation.
>
> Do what you feel is best. But I can't agree to these terms.

Defense counsel responded:

> Bearing in mind also that if you're convicted, the judge will probably put a no contact order in place anyway. But, who knows what a jury might say on these facts?
>
> I agree with you on the no contact order and mental health stuff though. I don't feel the facts of your case support those necessarily.

If a person is going to plead guilty to something, it should be a really good deal.

Clark argues that the September 16 e-mail in which she told defense counsel "I will take it as offered" constituted acceptance of the plea offer. However, Clark's statement was not an unconditional acceptance of the plea. Instead, Clark told defense counsel she would agree to the plea offer if defense counsel felt "that the prosecutor's offer is fair." But, Clark later explicitly refused to agree to portions of the plea offer, and said she would "rather go to jail." Because Clark did not accept the State's plea offer, defense counsel was not ineffective.[3]

We affirm.

WE CONCUR:

---

[3] Clark's pro se statement of additional grounds, which raises the same necessity defense claim raised by appellate counsel, is without merit.